No. 65,626

STATE OF KANSAS, *Appellee,* v. SHERMAN C. EDWARDS and
WANDA J. EDWARDS, *Appellants.*

(826 P.2d 1355)

Opinion filed February 28, 1992.

*Thomas Jacquinot,* assistant appellate defender, argued the cause, and *Jessica R. Kunen,* chief appellate defender, was with him on the brief for appellant.

*Jeffrey E. Goering,* assistant district attorney, argued the cause, and *Thomas J. Robinson,* assistant district attorney, *Nola Foulston,* district attorney, and *Robert T. Stephan,* attorney general, were with him on the briefs for appellee.

The opinion of the court was delivered by

SIX, J.: This consolidated criminal appeal arises from the operation of an alleged higher education "loan scam." Sherman C. Edwards and Wanda J. Edwards were convicted of multiple counts of making a false writing, K.S.A. 21-3711, and of criminal solicitation, K.S.A. 21-3303, in connection with the guaranteed student loan applications of eight purported students. Sherman and Wanda were also convicted of submitting false applications on behalf of themselves. Wanda was convicted of submitting a false application under the name of Jerline Johnson, a real person who did not give Wanda permission for the use of her name. Wanda and Sherman were also convicted of submitting a false application under the name of "Ann Dawson," who was a fictitious person.

The issues are: (1) sufficiency of the evidence; (2) whether the false information was material under K.S.A. 21-3711; (3) multiplicity—merger (whether the charge of aiding and abetting in making a false writing merged with the charge of solicitation to make a false writing); and (4) alleged factfinding errors.

The Court of Appeals in an unpublished opinion filed August 9, 1991, reversed the trial court and vacated the sentences.

The Court of Appeals reasoned that the Edwards actively recruited eight persons to apply for admission to Wichita State University (WSU) and for guaranteed student loans. The Edwards

were active in helping the eight fill out forms, shepherding them through the enrollment process, and collecting their money. However, the Court of Appeals stated:

"The record is silent on whether any of the false statements made in the applications were in any way material to the question of whether the applicants would be admitted and receive aid.

. . . .

"Although We have some tantalizing hints, there was no direct testimony that any of the false statements were in fact material. We do not know that the false statements made the applications any more likely to be accepted than if the truth had been stated."

The convictions, except count 13, were reversed as to Sherman on the basis of materiality. All of Wanda's convictions, except counts 3 and 13, also were reversed for lack of materiality. Counts 3 and 13 involved applications for Jerline Johnson (count 3), who did not give her permission for the application to be made, and for "Ann Dawson" (count 13), a fictitious person. Sherman's conviction on count 13 was reversed because there was no evidence in the record to show how Sherman was involved in the "Ann Dawson" application. Wanda's convictions on counts 3 and 13 were reversed because Wanda was improperly charged with making a false writing rather than the appropriate charge of forgery.

Jurisdiction is under our grant of the State's petition for review.

The State does not seek review of the dismissal of counts 3 and 13 relating to Wanda or of count 13 as it relates to Sherman. Our opinion in *State v. Rios*, 246 Kan. 517, 792 P.2d 1065 (1990), controls the disposition of counts 3 and 13. We affirm the Court of Appeals in reversing counts 3 and 13. We reverse the Court of Appeals and affirm the trial court on the other counts.

## Facts

The 27-count complaint/information charging Sherman and Wanda with the crimes of criminal solicitation and making false writings arose out of an alleged "student loan scam." The Edwards, who were married, solicited and assisted eight recruits in submitting false applications for admission to WSU. They also solicited and assisted in the submission of false applications for federally guaranteed student loans in exchange for a "cut" of the loan proceeds. The Edwards were charged with one count of solicitation and one count of making a false writing for each of

the eight recruits. They were also charged with making a false writing in connection with their own applications, an unauthorized application (Jerline Johnson), and that of a fictitious person (Ann Dawson).

None of the eight individuals who received student loans attended classes at any time. Each one testified, however, that at application time he or she intended to go to school but that circumstances conspired to prevent each one from attending.

The assistance Wanda and Sherman provided usually consisted of Wanda filling out and filing the necessary paperwork on behalf of the applicants. Wanda and Sherman would notify the applicants when the loan checks were received by WSU. Sherman and Wanda drove the applicants to WSU to enroll, obtain student identification cards, and receive a "rebate check" for the difference between tuition and fees and the loan amount. After receiving the rebate checks, Sherman and Wanda often provided rides to various banks so that the applicants could cash the loan checks and pay to the Edwards the "assistance" fee of $200-$300.

A secretary in the WSU housing office became suspicious. A man she identified as Sherman Edwards, at intervals throughout one afternoon, brought several individuals to the financial aid office. Edwards then accompanied the individuals to her office to pick up their student identifications. The secretary recorded the license number of the car being used to transport the applicants. She gave the car tag number to a co-worker who called the WSU police. The WSU police, joined by the Federal Bureau of Investigation and the United States Department of Education, investigated. The car was rented by Sherman. Several of the admission and loan applications contained incorrect information.

The State dismissed three counts (Nos. 1, 26, and 27) as to each defendant at the close of its case. At the conclusion of a bench trial, Sherman was found guilty of 10 counts of making a false writing and 8 counts of criminal solicitation. Wanda was convicted of 11 counts of making a false writing and 8 counts of criminal solicitation. The trial court found both defendants not guilty on four counts (Nos. 16, 17, 18, and 19).

## Sufficiency of the Evidence

Sherman and Wanda contend the evidence was insufficient to

convict them of the crimes charged. They reason that eight of the convictions of making a false writing should be vacated. The Edwards assert the State failed to prove actual knowledge of the false information contained in the applications of eight of the purported WSU students.

Our standard of review is whether, after a review of all the evidence, viewed in the light most favorable to the prosecution, we are convinced that a rational factfinder could have found the Edwards guilty beyond a reasonable doubt. See *State v. Graham,* 247 Kan. 388, 398, 799 P.2d 1003 (1990).

The crime of making a false writing is "making or drawing or causing to be made or drawn any written instrument . . . *with knowledge* that such writing falsely states or represents some material matter or is not what it purports to be, and with intent to defraud or induce official action." (Emphasis added.) K.S.A. 21-3711.

Knowledge is an essential element of the offense of making a false writing that the State must prove to obtain a conviction. Knowledge means actual information that the writing falsely states or represents some material matter and is intended to defraud or induce some official action. *State v. Conner,* 4 Kan. App. 2d 207, 208-09, 603 P.2d 1038 (1979), *rev. denied* 227 Kan. 927 (1980). Speculation, opinion, or constructive notice that the writing falsely represents a material matter is not sufficient. 4 Kan. App. 2d at 209.

The State concedes there is no direct evidence that the Edwards knew the applications related to the eight counts of making a false writing contained false information. However, the State asserts that circumstantial evidence is sufficient to support the convictions.

The finder of fact in this bench trial was the district judge. The credibility of witnesses is determined by the factfinder. *State v. Wade,* 244 Kan. 136, 146, 766 P.2d 811 (1989).

The Edwards do not dispute that Wanda's printing appears on four loan applications (Billy Melton, Marcetia McConico, James Earl Brown, and Sherman Woods). A documents examiner testified that a fifth application (Michael Prince) was printed by Wanda. Prince denied that the Edwards had anything to do with his application.

Count 6 charged the Edwards with submitting false writings on behalf of Billy Ray Melton. Melton's loan application falsely stated that he was receiving welfare in the form of Aid to Dependent Children (ADC). A State Department of Social and Rehabilitation Services (SRS) investigator testified that Melton received transitional general assistance through June 1986, but never received any ADC. Melton testified that Wanda filled out the application for him because he did not know how.

Count 10 charged the Edwards with making false writings on behalf of James Earl Brown. Brown's application falsely indicated that he was receiving ADC. The SRS investigator testified that Brown was not receiving any ADC. Knowledge of the falsity of this representation may be inferred from Brown's own testimony. Brown stated that Wanda and Sherman told him what to write on the forms, and he also stated that he knew the information was not true and correct at the time he signed the application.

Count 8 charged the Edwards with making false writings on behalf of Marcetia McConico, whose loan application was in Wanda's handwriting and listed McConico's address as 1901 North Spruce in Wichita. Her actual address was 1908 North Spruce. McConico testified that Wanda helped her fill out the forms.

Count 15 charged the Edwards with making a false writing on behalf of Mary Patrick, whose application did not disclose that she was currently attending a vocational school. Patrick testified that she filled out the application herself. The only assistance Patrick acknowledged receiving from the Edwards was a ride to WSU to submit the application. Patrick's testimony also indicated that she may have been at the Edwards' house when she filled out the application. Patrick's testimony was later impeached by the introduction of prior inconsistent statements that she had made to police officers. An investigator with the Department of Education testified that Patrick told him that her friend Wanda came by and said "everyone else was getting loans at W.S.U." and that Patrick should go there. Patrick then told the officer the Edwards took her to pick up the application and helped her fill it out at their house. Patrick told the investigator that Sherman Edwards assisted her in enrolling at WSU.

Count 21 charged the Edwards with making a false writing on behalf of Evelyn Ballance, whose application falsely stated that

she was receiving ADC. Ballance stated she was not receiving any assistance. Ballance denied that Wanda assisted her in filling out the application. Ballance testified that she did not have any contact with Wanda after receiving the loan check. Ballance's testimony was also impeached by prior inconsistent statements. She told the Department of Education investigator that Wanda involved her with WSU and that Wanda had filled out Ballance's application and informed her that either Sherman or Wanda would contact Ballance when the loan check came in and that Ballance would not be in any trouble. When Ballance picked up the check, Wanda was waiting outside the building and demanded her money. Ballance could not cash the rebate check immediately because she did not have the proper identification. Ballance told the officers that Wanda would leave notes or messages with Ballance's sister stating that she wanted her money for assisting with the loan application.

Count 23 charged the Edwards with making a false writing on behalf of Michael Prince, whose application falsely stated: (1) he graduated from Lawrence Dunbar High School in Lubbock, Texas, and (2) the number of his dependents. Prince's sister, Twyna Prince, indicated neither statement was true. Michael Prince denied receiving any assistance from either Wanda or Sherman in filling out and submitting the applications. Prince acknowledged in an interview with police officers that he had received some assistance from Wanda. Officer McCullough testified that when Michael was asked to tell the truth about his loan application he indicated that if he did "there were people that would find him and kill him." Michael then cut the interview short, left the WSU Police Station, and met the Edwards for lunch. The officers later visited with Michael at his girlfriend's house while interviewing his girlfriend. Michael told the officers that "Wanda did it."

Count 25 charged the Edwards with making a false writing in the applications of Sherman Woods, which falsely stated the number of his dependents and household size. Woods denied that he talked to either Wanda or Sherman about obtaining his loan or that Wanda had printed his application. He also testified that he was alone when he picked up his loan check, but a secretary in the WSU housing office identified Woods as the driver of the

car rented to Sherman Edwards on the day Edwards brought several persons in to obtain student loans.

Count 12 charged the Edwards with making a false writing on behalf of Twyna Prince, whose application misrepresented her high school graduation status and the number of her dependents. Twyna admitted the information on the applications was incorrect and that her handwriting appeared on the application. However, she testified that "when it came to the questions that would guarantee me getting that loan, they [Sherman and Wanda] told me what to put there." Brown similarly testified that the Edwards told him what information to record on the applications.

The State's theory that the Edwards' operation secured persons to apply for guaranteed student loans in order to profit is supported by the evidence. The Edwards' involvement with the various applications presents circumstantial evidence that they knew that the loan applications contained false information.

The State's loan scam theory is supported by additional evidence in the record. Walter Reed testified that he met Sherman and Wanda after others told him the Edwards could help him be admitted to WSU. He stated that Wanda told his mother and uncle that they also should apply for student loans. Reed testified that the Edwards gave him a ride to the bank. Wanda did not want to enter, stating that she was afraid she would be recognized because she had been in the bank so many times. An inspector with the Department of Education testified that his office received a complaint from Janet Ballance (deceased), Evelyn's sister, regarding "some type of loan scam" run by the Edwards. Several of the purported students stated or implied that Sherman and Wanda either had the necessary student loan forms at their house or carried them personally. Others who testified stated that they either obtained the applications from WSU themselves or that the Edwards took them to WSU to pick up the necessary forms. Lueva Jackson was a reluctant State's witness at trial. She testified that she did not see anything out of the ordinary when she went to the Edwards' house. However, the prosecutor's direct examination of Jackson indicates that she told the police a radically different story. The trial judge found that Jackson told investigators she had seen Wanda filling out loan applications at the

kitchen table and that Wanda and Sherman "were helping a lot of people" fill out loan applications to get a cut of the proceeds.

The totality of the circumstantial evidence of the Edwards' knowledge of the falsity of the representations in the applications was sufficient to sustain the convictions as to counts 8 (McConico), 12 (Twyna Prince), 15 (Patrick), 21 (Ballance), 23 (Michael Prince), and 25 (Woods), in addition to counts 6 (Melton) and 10 (Brown).

### K.S.A. 21-3711—Material Matter

Sherman was convicted of count 2, making a false writing, in connection with his own loan application. Wanda was convicted of count 4, making a false writing, in connection with her loan application. The Edwards contend, with respect to counts 2 and 4, that the State failed to prove that the false representations on their own individual loan applications were material.

Sherman's application misrepresented his address and his marital status, and Wanda's application misrepresented her marital status and falsely stated that she was receiving ADC. The Edwards also assert that the misrepresentations concerning the receipt of ADC on the applications of Melton, Brown, and Ballance, and the misrepresentation about technical school on Patrick's application, were not material.

Information is considered material under K.S.A. 21-3711 (making a false writing) if a reasonable person would attach importance to the information in choosing a course of action in the transaction in question. *State v. Roberts-Reid,* 238 Kan. 788, 789, 714 P.2d 971 (1986). Larry Rector, WSU's director of financial aid, testified that if his office was aware of a false address "or if there was anything false on the application, the references, any information, then we would not approve [the application]." Based on Rector's testimony, it is clear that WSU attached importance to the information listed on the applications in determining whether to approve the applications. He also testified that the social security number and the number of persons in the applicant's household was significant and that nonattendance at class "would not be fulfilling the requirement of what the loan was made for and that would be a falsehood and they should not have received the loan."

In our view the record supports the finding of the trial court that the misrepresentations were material.

### Multiplicity—Merger

The Edwards argue that they cannot be convicted of both making a false writing and soliciting an individual to make that false writing. Their contention appears to be that, because the false writing convictions were based on the State's theory that the Edwards aided and abetted other individuals in making false writings, any solicitation to make those false writings merged into the intended crime. The Edwards contend that all the elements of criminal solicitation are found within the crime of aiding and abetting a crime, thus making the solicitation convictions violative of the double jeopardy clause and the concept of multiplicity.

The State reasons that criminal solicitation is a separate offense from aiding and abetting the commission of a crime and that each crime involves different elements; therefore, the offenses did not merge. We agree.

In *State v. Freeman*, 236 Kan. 274, 280, 689 P.2d 885 (1984), we discussed the concept of multiplicity, which is "the charging of a single offense in several counts of a complaint or information." The concern with multiplicity is that it creates the potential for multiple punishments for the same offense, which is prohibited by the double jeopardy clause of the Fifth Amendment of the United States Constitution and section 10 of the Kansas Bill of Rights. *Brown v. Ohio*, 432 U.S. 161, 165, 53 L. Ed. 2d 187, 97 S. Ct. 2221 (1977); *Freeman*, 236 Kan. at 280-81.

K.S.A. 21-3107(1) formulates the limitations upon unfair multiplicity of convictions and prosecutions. *Freeman*, 236 Kan. at 281.

"When the same conduct of a defendant may establish the commission of more than one crime under the laws of this state, the defendant may be prosecuted for each of such crimes. Each of such crimes may be alleged as a separate count in a single complaint, information or indictment." K.S.A. 21-3107(1).

Under K.S.A. 21-3107(1), a prosecutor is free to charge multiplicitous crimes, but a defendant cannot be punished more than once for the same crime. 236 Kan. at 282. The Edwards' argument necessarily assumes they are being punished more than once for the same crime.

K.S.A. 21-3303(a) provides: "Criminal solicitation is commanding, encouraging or requesting another person to commit a felony, attempt to commit a felony or aid and abet in the commission or attempted commission of a felony for the purpose of promoting or facilitating the felony."

K.S.A. 1991 Supp. 21-3205(1) provides: "A person is criminally responsible for a crime committed by another if such person intentionally aids, abets, advises, hires, counsels or procures the other to commit the crime."

In the case at bar, the trial judge found 21-3205(1) applied, making Sherman and Wanda criminally responsible for the false statements contained in the applications of Melton, McConico, Brown, Twyna Prince, Patrick, Ballance, Michael Prince, and Woods. The trial court stated that the Edwards were criminally responsible because both were actively involved in promoting, preparing, and submitting the applications of the purported students.

The crime of making a false writing includes "making or drawing *or causing to be made or drawn*" any false writing. (Emphasis added.) K.S.A. 21-3711. The evidence established that Wanda and Sherman caused false writings *to be made or drawn* on behalf of the purported students. The separate crime of criminal solicitation was complete when Wanda and Sherman commanded, encouraged, or requested the individuals: (1) to make false writings, or (2) to aid Wanda and Sherman in the commission of making a false writing for the purpose of promoting or facilitating the crime.

The Edwards further assert that the offenses of criminal solicitation and making a false writing were multiplicitous. They argue that they were prosecuted under the theory of aiding and abetting with respect to the making of the false writing charges. They emphasize that all of the elements of criminal solicitation were contained in the description of aiding and abetting. However, criminal solicitation as defined in K.S.A. 21-3303 contains the requirement that the offense solicited be a felony, whereas aiding and abetting covers misdemeanor offenses as well. Further, unlike criminal solicitation, aiding and abetting requires that the person "knowingly associates himself with [an] unlawful venture and participates in a way which indicates he willfully is furthering the

success of the venture." *State v. Buckland,* 245 Kan. 132, 140, 777 P.2d 745 (1989). Since the offenses of criminal solicitation and the theory of aiding and abetting each contained an element which was not encompassed within the other the offenses did not merge. *State v. Zamora,* 247 Kan. 684, 694, 803 P.2d 568 (1990). The offenses were not multiplicitous. The Edwards were not punished twice for the same crime.

### Factfinding Errors

The Edwards allege the trial court's cumulative factfinding errors establish that "substantial justice" was not done in this case. The State contends that the Edwards' failure to mention any specific factfinding errors presents nothing for appellate review. We agree.

The Edwards do not identify any of the cumulative factfinding errors the trial court allegedly made. " 'An appellant has the burden of furnishing a record which affirmatively shows that prejudicial error occurred in the trial court. In the absence of such a record, we presume that the action of the trial court was proper.' " *State v. Gonzales,* 245 Kan. 691, 699, 783 P.2d 1239 (1989). No error has been shown.

We affirm the trial court's finding that Sherman Edwards is guilty on nine counts of making a false writing and eight counts of criminal solicitation. Sherman's conviction on count 13 of making a false writing is reversed. The trial court's finding that Wanda Edwards is guilty of making a false writing on counts 4, 6, 8, 10, 12, 15, 21, 23, and 25 is affirmed. Wanda's convictions on counts 3 and 13 of making a false writing are reversed. The trial court's finding that Wanda is guilty of eight counts of criminal solicitation is affirmed.

The Court of Appeals is affirmed in part and reversed in part. The trial court is affirmed in part and reversed in part. The case is remanded to the trial court to enter an order in conformity with this opinion.