No. 79,948

STATE OF KANSAS, *Appellee*, v. RAY F. GARCIA, JR., *Appellant*.

(32 P.3d 188)

Opinion filed September 28, 2001.

*Reid T. Nelson*, assistant appellate defender, argued the cause, and *Stephen B. Chapman*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, were with him on the briefs for appellant.

*Debra S. Peterson*, assistant district attorney, argued the cause, and *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: This case comes before us on the State's petition for review concerning the limited issue of whether the defendant's conviction for aggravated kidnapping and his conviction of one of

two counts of rape or the one count of aggravated criminal sodomy are multiplicitous as found by the Court of Appeals in an unpublished opinion filed December 17, 1999.

In the afternoon of December 7, 1996, defendant Ray F. Garcia visited the home of A.L.R., age 56, and her husband LeRoy, age 65. The defendant had previously visited their home on "many occasions" to see LeRoy, who repaired and sold bicycles in his spare time.

During the early morning hours of the following day, A.L.R. was awakened when she felt something brush up against her arm. The room was dark and A.L.R. could only make out shadows. A.L.R. turned on a light and saw a person bending over at the foot of the bed. The intruder told A.L.R. to turn off the light and pull the covers over her head. A.L.R. testified that she recognized Garcia's voice immediately.

The intruder asked LeRoy where his money was. When LeRoy did not reply, A.L.R. told the intruder that it was on the bedside table. The intruder then asked about A.L.R.'s money. She told him it was in her purse out in the hall. The intruder instructed A.L.R. to get out of bed and retrieve her purse. LeRoy remained in the bed. A.L.R. returned to the bedroom with her purse and the intruder pulled her up against him. The intruder began feeling A.L.R.'s breasts and buttocks while removing her pajamas. The intruder told A.L.R. to get on her knees at the foot of a twin bed that was in the room. The intruder knelt down behind A.L.R. and penetrated her vagina with his penis. The intruder then entered A.L.R.'s rectum, and finally reentered her vagina.

A.L.R. was ordered to return to bed. The intruder proceeded to remove personal property from the bedroom. The intruder asked A.L.R. if she had any tape. She told him where it was located. The intruder returned and taped the hands and feet of A.L.R. and LeRoy. The defendant was in the house for approximately 2 hours before he took A.L.R.'s car and left.

The defendant was charged with one count of aggravated burglary, two counts of rape, one count of aggravated criminal sodomy, two counts of aggravated robbery, one count of aggravated kidnap-

ping, and one count of kidnapping. He was found guilty on all charges.

The Court of Appeals reversed one count of aggravated robbery, vacated the defendant's conviction for aggravated kidnapping, remanded the case to the trial court for sentencing on kidnapping, and affirmed all other convictions. The defendant's case was remanded for resentencing. We denied the defendant's petition for review but granted the State's petition on the limited issue of whether the Court of Appeals was correct in its determination that the defendant's convictions for aggravated kidnapping and one of the rape or aggravated sodomy convictions were multiplicitous and in vacating the defendant's aggravated kidnapping conviction.

## Multiplicity

In concluding that multiplicity existed the Court of Appeals stated:

"The evidence which supports the bodily harm element of aggravated kidnapping is the commission of two rapes and a sodomy. The State charged each act of violence as a separate crime, resulting in two convictions for rape and one for sodomy. There is no other evidence of bodily harm to support the aggravated nature of the kidnapping. Under the facts of this case, based on the allegations of the complaint and the evidence which the State was required to present, the crime of aggravated kidnapping was multiplicitous with one of the counts of rape or the sodomy."

There is no dispute that rape (*State v. Peltier*, 249 Kan. 415, 418, 819 P.2d 628 [1991], *cert. denied* 505 U.S. 1207 [1992]) and sodomy (*State v. Chears*, 231 Kan. 161, 165, 643 P.2d 154 [1982]) constitute the infliction of bodily harm.

The State argues that the Court of Appeals erred in finding that multiplicity existed. The State contends that the proper test for multiplicity is based on a comparison of the elements of the crimes, and that when such a comparison is made, multiplicity is not found.

In order to examine the State's contention, it is necessary to set forth in some detail the law in Kansas with regard to multiplicity. This has been a highly confusing subject in Kansas law, and our prior cases have not always been clear. However, when our prior

cases are comprehensively examined, several rules with regard to multiplicity become apparent.

Multiplicity is the charging of a single offense in several counts of a complaint or information. The primary concern with multiplicity is that it creates the potential for multiple punishments for a single offense. *State v. Vontress*, 266 Kan. 248, 255, 970 P.2d 42 (1998). Such multiple punishments are prohibited by the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights. *Brown v. Ohio*, 432 U.S. 161, 165, 53 L. Ed. 2d 187, 97 S. Ct. 2221 (1977); *State v. Edwards*, 250 Kan. 320, 329, 826 P.2d 1355 (1992). However, the Double Jeopardy Clause's protection against multiple punishments extends only to prevent the sentencing court from prescribing greater punishment than the legislature intended, and where a legislature specifically authorizes cumulative punishment under two statutes for the same offense, the Double Jeopardy Clause is not violated. *Missouri v. Hunter*, 459 U.S. 359, 366-69, 74 L. Ed. 2d 535, 103 S. Ct. 673 (1982). The question in determining whether convictions of certain crimes are multiplicitous, therefore, necessarily hinges on what the legislature has provided. Even though certain crimes may in fact be traditionally multiplicitous, this does not prevent the legislature from specifically authorizing cumulative punishment if it chooses to do so.

The concept of multiplicity in Kansas comes from two sources. The first is the traditional "common-law" multiplicity concept. This exists where the State attempts to use a single wrongful act as the basis for multiple charges and is based on the merger of the charges. *State v. Garnes*, 229 Kan. 368, 372, 624 P.2d 448 (1981). This concept has been a part of Kansas law since at least our decision in *State v. Colgate*, 31 Kan. 511, 515, 3 Pac. 346 (1884), wherein we stated: "[U]pon general principles a single offense cannot be split into separate parts, and the supposed offender be prosecuted for each of such separate parts, although each part may of itself constitute a separate offense." The test for whether the offenses merge and are, therefore, multiplicitous is whether each offense charged requires proof of a fact not required in proving the other; if so, then the offenses do not merge and are not mul-

tiplicitous. *Garnes*, 229 Kan. at 373. Offenses also do not merge if they are committed separately and severally at different times and at different places. 229 Kan. at 373.

The defendant's conviction for aggravated kidnapping and either one of the rape convictions or the aggravated criminal sodomy conviction are not multiplicitous under the traditional "common-law" multiplicity concept, as both rape charges and the aggravated criminal sodomy charge require an element not found in the aggravated kidnapping charge. See *State v. Chears*, 231 Kan. at 163 (holding that aggravated kidnapping and sodomy were not multiplicitous, even though sodomy was used to supply the element of bodily harm required for aggravated kidnapping); *State v. Brown*, 181 Kan. 375, 389-90, 312 P.2d 832 (1957) (holding that rape, even though supplying the essential element of bodily harm required for first-degree kidnapping, was a separate and distinct offense, and the offenses were not multiplicitous).

However, the legislature added another layer to the multiplicity analysis with the passage of K.S.A. 21-3107. See *State v. Freeman*, 236 Kan. 274, 281, 689 P.2d 885 (1984) (noting that 21-3107 "formulates the limitations upon unfair multiplicity of convictions or prosecutions"). K.S.A. 21-3107(1) provided:

"When the same conduct of a defendant may establish the commission of more than one crime under the laws of this state, the defendant may be prosecuted for each of such crimes. Each of such crimes may be alleged as a separate count in a single complaint, information or indictment."

Thus, under K.S.A. 21-3107(1), a prosecutor is free to charge multiplicitous crimes. *State v. Edwards*, 250 Kan. at 329. The mere charging of multiplicitous crimes and prosecution of them is not a violation of the Double Jeopardy Clause so long as the defendant is not punished more than once for the same crime. *State v. Mincey*, 265 Kan. 257, 262, 963 P.2d 403 (1998).

The version of K.S.A. 21-3107(2) in effect at the time the defendant committed the crimes we now consider provided in pertinent part: "Upon prosecution for a crime, the defendant may be convicted of either the crime charged or an included crime, but not both." Thus, K.S.A. 21-3107(2) adds another layer to the tra-

ditional merger test for multiplicity by providing that a defendant may not be convicted of both the offense charged and an included offense. See *State v. Rinck*, 256 Kan. 848, 849-50, 888 P.2d 845 (1995).

In *Rinck*, we refused to apply earlier law limiting the test for multiplicity to the traditional common-law elements test, choosing instead to follow recent law incorporating the test for included offenses under K.S.A. 21-3107. 256 Kan. at 850; see *State v. Warren*, 252 Kan. 169, 180-82, 843 P.2d 224 (1991) (using the included crimes framework as a test for multiplicity); see also *State v. Mincey*, 265 Kan. at 262-63 (recognizing that the same test is used in determining whether offenses charged in a complaint or information constitute lesser included offenses and multiple charges).

Thus, under Kansas law, crimes are multiplicitous where: (1) the crimes merge, that is, they constitute a single wrongful act, or the same evidence is required to prove both crimes; but if each offense requires proof of a fact not required in proving the other, the offenses do not merge; and (2) one offense is an included offense of the other as provided under K.S.A. 21-3107(2). As a result, the defendant's convictions must be analyzed not only under the traditional elements test as set forth in *Garnes* but also under the legislative test for determining whether one offense is an included offense of the other.

At the time the offenses were committed, K.S.A. 21-3107(2) provided:

"An included crime may be any of the following:
   (a)   A lesser degree of the same crime;
   (b)   an attempt to commit the crime charged;
   (c)   an attempt to commit a lesser degree of the crime charged; or
   (d)   a crime necessarily proved if the crime charged were proved."

It is clear that neither rape nor aggravated criminal sodomy is a lesser degree, attempt, or attempt to commit a lesser degree of aggravated kidnapping. Therefore, the sole question is whether one of the rapes or the aggravated criminal sodomy is "a crime necessarily proved if the crime charged (aggravated kidnapping) were proved." See K.S.A. 21-3107(2)(d).

Bodily harm is an essential element of aggravated kidnapping. The record supports the conclusion that in proving this element the State relied upon one of the rapes or the aggravated criminal sodomy. In order to prove the aggravated kidnapping, the State necessarily proved that one of the rapes or the aggravated criminal sodomy occurred. In accordance with the provisions of K.S.A. 21-3107, one of the rapes or the aggravated criminal sodomy had to be proved if the crime charged, aggravated kidnapping, was to be proved. Thus, one of the rapes in this case or the aggravated criminal sodomy provided proof of the bodily harm element of aggravated kidnapping. Under these circumstances, one of the rapes or the aggravated criminal sodomy was a crime necessarily proved if the crime of aggravated kidnapping was proved and is, therefore, an included crime under K.S.A. 21-3107(2)(d).

We agree with the Court of Appeals' determination that the aggravated kidnapping and either one of the rape convictions or the aggravated criminal sodomy conviction were multiplicitous. Under the clear provisions of K.S.A. 21-3107, the defendant's convictions of aggravated kidnapping, as the crime charged, and one of the included crimes of either rape or aggravated criminal sodomy may not stand. Our decision finds support in two recent cases decided by this court: *State v. Warren,* 252 Kan. 169, and *State v. Vontress,* 266 Kan. 248.

In *Warren,* the defendant argued that his conviction for aiding and abetting aggravated battery was multiplicitous with his conviction for aiding and abetting aggravated robbery. As in the case we now consider, there was no dispute in *Warren* that a single wrongful act provided the basis for both charges. After a thorough analysis of the traditional multiplicity test, we concluded "that aggravated robbery and aggravated battery are multiplicitous if . . . the same act of violence provided the basis for each conviction." 252 Kan. at 182.

In *Vontress,* the defendant argued that his convictions of aggravated robbery and aggravated battery were multiplicitous in violation of the constitutional protection against double jeopardy. He argued, as does the defendant in this case, that "proof of the same act of violence, the infliction of bodily harm upon [the victim], was

necessary to prove both the aggravated robbery and aggravated battery counts." 266 Kan. at 255. In concluding that the convictions were multiplicitous and that the punishment for both crimes was a violation of double jeopardy, we noted that the State, in order to prove the bodily harm element of the aggravated robbery, had to prove that the defendant shot the victim, and this same fact also was required to prove the great bodily harm element of aggravated battery. Thus, under the information and instructions, the aggravated battery count required proof of the fact which was also required to prove the aggravated robbery charge, and the convictions were multiplicitous. 266 Kan. at 257.

In the case at hand, the bodily harm needed to prove aggravated kidnapping was the same bodily harm supplied by one of the rape convictions or the aggravated criminal sodomy conviction. Consistent with the Court of Appeals' decision and our decisions in *Warren* and *Vontress*, we conclude that the aggravated kidnapping conviction and one of the rape convictions or the aggravated criminal sodomy conviction are multiplicitous. We, therefore, affirm the Court of Appeals' decision reversing the defendant's conviction for aggravated kidnapping and remanding for resentencing on the lesser offense of kidnapping.

It should be noted that in 1998, the Kansas Legislature amended K.S.A. 21-3107 to essentially remove the former K.S.A. 21-3107(2)(d). See L. 1998, ch. 185, § 1. In its place, the legislature inserted a new version, K.S.A. 2000 Supp. 21-3107(2)(b), which provides that an included crime is one where "all of the elements of the lesser crime are identical to some of the elements of the crime charged." This will necessarily change the multiplicity analysis for cases which occur under the new statute and signifies a return to the identity of the elements standard that this court used prior to the enactment of K.S.A. 21-3107. Such a change, while allowing convictions for crimes which would have been multiplicitous under the statute at issue here, does not violate constitutional prohibitions against double jeopardy as it does not subject defendants to punishments greater than those intended by the legislature. See *Missouri v. Hunter*, 459 U.S. at 366-69.

The judgment of the Court of Appeals affirming in part and reversing in part the district court is affirmed; the judgment of the district court is affirmed in part and reversed in part, and the case is remanded for resentencing.

ALLEGRUCCI, J., concurring: I concur because in my view the majority opinion in *State v. Robbins*, 272 Kan. 158, 32 P.3d 171 (2001), expresses the correct rationale in resolving the issue of multiplicity. *State v. Fike*, 243 Kan. 365, 757 P.2d 724 (1988), is relevant and controlling in the present case.

· Here, the majority opinion does not mention *Fike*; however, that omission does not deter the dissent from vilifying our decision in *Fike*. The dissent argues that "bodily harm is not an element of rape although it is an element of aggravated kidnapping," and further, that it is not necessary for the State to prove the rape or sodomy to prove aggravated kidnapping. I disagree.

As noted in *Robbins*, the State had to prove, and the jury had to find, that the defendant committed a rape or sodomy to find him guilty of aggravated kidnapping. That is true because rape or sodomy is "bodily harm." The trial court instructed the jury to that effect. The State conceded in its closing argument that the only difference between simple kidnapping and aggravated kidnapping is the sexual assault. The State told the jury that if it did not find that a sexual assault occurred, then the crime was simply kidnapping.

Notwithstanding the dissent, the ultimate question is whether the defendant is being punished twice for one crime. The dissent talks about the elements test; however, the test is whether the State is carving two charges out of one criminal act. Here, the State must prove that the defendant caused bodily harm, and to do that it must prove that he raped or sodomized the victim. If the State fails to prove either, then there is no "bodily harm" and no aggravated kidnapping. Whether the crimes charged are multiplicitous or one is included in the other, the defendant can only be convicted and punished for one.

In my view, the majority opinion in *Robbins* correctly resolves the issue of multiplicity, and for that reason I concur.

ABBOTT, J., joins in the foregoing concurring opinion.

McFARLAND, C.J., dissenting: I strongly disagree with the majority on its analysis of the multiplicity issue and its decision to vacate the aggravated kidnapping conviction and remand for resentencing on kidnapping.

The majority opinion states: "[I]t is necessary to set forth in some detail the law in Kansas with regard to multiplicity. This has been a highly confusing subject in Kansas law, and our prior cases have not always been clear." 272 Kan. at 142.

I agree that our recent pronouncements on multiplicity have been confusing. However, I believe the majority opinion succeeds only in chiseling the confusion onto stone tablets.

The majority opinion states:

"The concept of multiplicity in Kansas comes from two sources. The first is the traditional 'common-law' concept. This exists where the State attempts to use a single wrongful act as the basis for multiple charges and is based on the merger of the charges. *State v. Garnes*, 229 Kan. 368, 372, 624 P.2d 448 (1981). This concept has been a part of Kansas law since at least our decision in *State v. Colgate*, 31 Kan. 511, 515, 3 Pac. 346 (1884), wherein we stated: '[U]pon general principles a single offense cannot be split into separate parts, and the supposed offender be prosecuted for each of such separate parts, although each part may of itself constitute a separate offense.' The test for whether the offenses merge and are, therefore, multiplicitous is whether each offense charged requires proof of a fact not required in proving the other; if so, then the offenses do not merge and are not multiplicitous. *Garnes*, 229 Kan. at 373. Offenses also do not merge if they are committed separately and severally at different times and at different places. 229 Kan. at 373.

"The defendant's conviction for aggravated kidnapping and either one of the rape convictions or the aggravated sodomy conviction are not multiplicitous under the traditional 'common-law' multiplicity concept, as both rape charges and the aggravated sodomy charge require an element not found in the aggravated kidnapping charge. See *State v. Chears*, 231 Kan. at 163 (holding that aggravated kidnapping and sodomy were not multiplicitous, even though sodomy was used to supply the element of bodily harm required for aggravated kidnapping); *State v. Brown*, 181 Kan. 375, 389-90, 312 P.2d 832 (1957) (holding that rape, even though supplying the essential element of bodily harm required for first-degree kidnapping, was a separate and distinct offense, and the offenses were not multiplicitous)."

The majority opinion then concludes that K.S.A. 21-3107(2)(d), in the form in effect at the time of the offenses, adds "another layer

to the traditional merger test for multiplicity." The pertinent portions of K.S.A. 21-3107 are as follows:

"(1)   When the same conduct of a defendant may establish the commission of more than one crime under the laws of this state, the defendant may be prosecuted for each of such crimes. Each of such crimes may be alleged as a separate count in a single complaint, information or indictment.

"(2)   Upon prosecution for a crime, the defendant may be convicted of either the crime charged or an included crime, but not both. An included crime may be any of the following:

(a)   A lesser degree of the same crime;
(b)   an attempt to commit the crime charged;
(c)   an attempt to commit a lesser degree of the crime charged; or
(d)   a crime necessarily proved if the crime charged were proved."

K.S.A. 21-3107(1) allows an individual to be charged with multiple violations arising from a single transaction when the same conduct may establish the commission of more than one crime. *State v. Perry*, 266 Kan. 224, 968 P.2d 674 (1998). This statute is limited by K.S.A. 21-3107(2) wherein a defendant may be charged with multiple violations arising from a single transaction, but he or she may be convicted of the crime charged or an *included* crime, but not both. The statute then defines what an included crime is. It is important to look closely at the four categories of included crimes in K.S.A. 21-3107:

(2)(a)   A lesser degree of the same crime: The most common of degree crimes are the four homicide statutes: murder in the first degree, K.S.A. 21-3401; murder in the second degree, K.S.A. 21-3402; voluntary manslaughter, K.S.A. 21-3403; and involuntary manslaughter, K.S.A. 21-3404. The only element they have in common is a dead person for whose death the defendant is culpable. The degrees of homicide do not build upon each other. For example, involuntary manslaughter is a reckless unintentional killing under certain specified circumstances and is not a crime necessarily proven in a higher degree of homicide. By including degrees of the same offense in the definition of *included* crimes, a defendant cannot be convicted of two degrees of homicide for one death. This is not an elements test—rather (2)(a) states different degrees of a crime are *included* crimes.

(2)(b)   An attempt to commit the crime charged: This is self-explanatory. For a single act, a defendant could not be convicted of, for example, burglary and attempted burglary.

(2)(c)   An attempt to commit a lesser degree of the crime charged: Again, this is self-explanatory. For a single act, a defendant could not be convicted of, for example, aggravated burglary and attempted simple burglary.

(2)(d)   A crime necessarily proven if the crime charged were proven: This category is the elements test—not some new "layer to the traditional test for multiplicity," as stated in the majority opinion. These *included* crimes are offenses that build on each other by the addition of an element. For example, aggravated kidnapping is kidnapping with the added element of bodily harm to the victim. Aggravated robbery is robbery with the added element of the perpetrator being armed with a dangerous weapon or the infliction of bodily harm on the victim. More than two crimes may build on each other, such as battery, battery on a law enforcement officer, aggravated battery, and aggravated battery on a law enforcement officer. In determining whether a crime is necessarily proven when the charged crime is proven one looks to the elements of the crimes. In my example previously set forth, regardless of the particular facts of a case set forth at trial:

   (a)   If aggravated kidnapping is proven, kidnapping has been proven;
   (b)   If aggravated robbery is proven, robbery has been proven;
   (c)   If aggravated battery on a law enforcement officer is proven, then battery on a law enforcement officer and aggravated battery have also been proven.

The charging instrument is the key to determining whether one crime is necessarily proven by proving another.

As Justice Larson, speaking for the court in *State v. Webber*, 260 Kan. 263, 283, 918 P.2d 609 (1996), *cert. denied* 519 U.S. 1090 (1997), stated:

"The Fifth Amendment guaranty against double jeopardy provides constitutional protection against multiple prosecutions for the same offense and multiple punishments for the same crime. *North Carolina v. Pearce*, 395 U.S. 711, 23 L.

Ed. 2d 656, 89 S. Ct. 2072 (1969). 'Multiplicity exists if the State uses a single wrongful act as the basis for multiple charges. Charges are not multiplicitous if each charge requires proof of a fact not required in proving the other.' *State v. Baker*, 255 Kan. 680, Syl. ¶ 2, 877 P.2d 946 (1994).

"We have held that conspiracy and aiding and abetting another offense are not multiplicitous. *State v. Hobson*, 234 Kan. 133, 139, 671 P.2d 1365 (1983). Each offense requires proof of a element not required by the other: 'Conspiracy requires an agreement to commit a crime, while aiding and abetting requires actual participation in the act constituting the offense.'

"Shari argues *Hobson* is distinguishable because in her case the jury must have relied on the same conduct to find both an implicit agreement and her actual participation. *Hobson* directly addresses this argument: 'In the trial of a criminal case [multiplicity] does not depend upon whether the facts proved at trial are actually used to support conviction of both offenses charged; rather, it turns upon whether the necessary elements of proof of the one crime are included in the other.' 234 Kan. 133, Syl. ¶ 3."

The majority opinion concludes that the aggravated kidnapping conviction is multiplicitous with either one of the rapes or the aggravated sodomy convictions. This is as far removed from the elements test as one can get as the crimes share not a single element. Note: Bodily harm is not an element of rape or aggravated sodomy although it is an element of aggravated kidnapping. The majority rests its multiplicity conclusion on the fact that the bodily harm element of aggravated kidnapping was satisfied by one of the three sex crime convictions.

Before proceeding further, it is appropriate to describe how, in our law, rape, by itself, came to satisfy the element of bodily harm.

As far back as 1957, in *State v. Brown*, 181 Kan. 375, Syl. ¶ 4, 312 P.2d 832 (1957), we adopted the California rule that "forcible rape itself" constituted bodily harm for satisfaction of that element of aggravated kidnapping, holding:

"Where a defendant is charged with rape in one count and kidnapping in the first degree in another count, both growing out of one comprehensive plan, it is held that the defendant is properly charged under G. S. 1949 21-449, with kidnapping in the first degree—there being no defect in the charge on the ground that rape supplied the element of bodily harm required in proof of kidnapping in the first degree."

Additionally, we have repeatedly held that rape constitutes bodily harm for aggravated kidnapping purposes. See *State v. Coberly*,

233 Kan. 100, 106-07, 661 P.2d 383 (1983); *State v. Barry*, 216 Kan. 609, 618-19, 533 P.2d 1308 (1974); *Sharp v. State*, 203 Kan. 937, 942, 457 P.2d 14 (1969); *State v. Ayers*, 198 Kan. 467, 471, 426 P.2d 21 (1967); *Brown*, 181 Kan. at 389-90; PIK Crim. 3d 56.25 (1999 Supp.), Notes on Use. I believe this longstanding precedent is both significant and important. A rape victim may suffer objectively demonstrable bodily harm from the force used to overcome her resistance to the accomplishment of the sex act, which can satisfy the bodily harm element of aggravated kidnapping. However, the rule that rape alone constitutes bodily harm for purposes of proving that element of aggravated kidnapping means that the proof of bodily harm does not depend upon the particular facts of the physical damage done by the act of rape itself. Evidence of trauma and tears to the body need not be introduced. Such evidence is also unnecessary for a rape conviction. Our cases have held, therefore, that it is unnecessary to separately prove the bodily harm element of aggravated kidnapping where a rape has occurred, as all rapes are to be considered bodily harm for purposes of aggravated kidnapping. The same reasoning applies to aggravated sodomy as supplying the bodily harm element of aggravated kidnapping.

With this in mind, it is necessary to analyze the majority opinion's conclusion that K.S.A. 21-3107(2)(d) added "another layer" to the elements test. In my opinion, as previously discussed, this is wholly erroneous. K.S.A. 21-3107(2)(d) is the traditional elements test.

The majority opinion cites *State v. Warren*, 252 Kan. 169, 180-82, 843 P.2d 224 (1991), and *State v. Vontress*, 266 Kan. 248, 255, 970 P.2d 42 (1998), in support of its "another layer" conclusion. In analyzing these two cases, one cannot avoid discussing the infamous *State v. Fike*, 243 Kan. 365, 757 P.2d 724 (1988), which spawned them. This dissent is not the time or place for an in-depth look at the ill-conceived *Fike* decision and the great harm and widespread confusion it caused in what had been a comparatively well-stated body of law relative to lesser included offenses. Inasmuch as a trial judge had a duty to instruct on all lesser included offenses whether or not requested to do so by the defendant, the post-*Fike* confusion as to what was or was not a lesser included offense cre-

ated many problems. In essence, *Fike* interpreted K.S.A. 21-3107(2)(d) to expand the law of lesser included offenses in such a manner that, on the particular evidence introduced at trial in a particular case, virtually any crime could conceivably be a lesser included offense of the charged offense. The result was rather like a complex slalom ski event where most of the course markers have been removed. The situation was so bad that the 1998 legislature sought to erase *Fike* from the face of the earth by the elimination of K.S.A. 21-3107(2)(d), adding in its place K.S.A. 2000 Supp. 21-3107(2)(b). For purposes of comparison, both versions are set out here:

K.S.A. 21-3107:

"(2)   Upon prosecution for a crime, the defendant may be convicted of either the crime charged or an included crime, but not both. An included crime may be any of the following:

    (a)   A lesser degree of the same crime;
    (b)   an attempt to commit the crime charged;
    (c)   an attempt to commit a lesser degree of the crime charged; or
    (d)   a crime necessarily proved if the crime charged were proved."

K.S.A. 2000 Supp. 21-3107:

"(2)   Upon prosecution for a crime, the defendant may be convicted of either the crime charged or a lesser included crime, but not both. A lesser included crime is:

    (a)   A lesser degree of the same crime;
    (b)   a crime where all elements of the lesser crime are identical to some of the elements of the crime charged;
    (c)   an attempt to commit the crime charged; or
    (d)   an attempt to commit a crime defined under subsection (2)(a) or (2)(b)."

Extensive hearings were held by the 1998 legislature in which many judges and attorneys testified as to the various problems resulting from *Fike*. The general tenor thereof is well illustrated in the written testimony of James W. Clark, Executive Director of the Kansas County and District Attorney Association, which starts out: "*Fike* is a Four-lettered Word." Minutes of the Senate Judiciary Committee, January 27, 1998, Attachment 6-1.

With this in mind, let us look at *State v. Warren*, 252 Kan. 169. In *Warren*, the issue was whether convictions of aiding and abet-

ting aggravated robbery and aiding and abetting aggravated battery were multiplicitous because the element of force required by each was satisfied by the same act of force, *i.e.,* knocking the elderly victim down. Although no issue of a lesser included offense was involved, the court made reference to the lesser included offense rationale of *Fike. Fike* held that 21-3107(2)(d) added a new prong to the elements test for *lesser included offenses.* The court in *Warren* did not adopt the second prong of *Fike* into the law of multiplicity. In fact, it cited the traditional elements test for multiplicity. Specifically, it stated:

"In *State v. Mason,* 250 Kan. 393, 827 P.2d 748 (1992), the defendant raised a multiplicity argument, cited K.S.A. 21-3107(2), and cited three cases applying that statute. The State relied upon K.S.A. 21-3107(1). This court discussed the two-prong *Fike* test, including more recent applications of it, and then held: 'Multiplicity does not depend on whether the facts proved at trial are actually used to support the convictions of both offenses; rather, multiplicity turns on whether the necessary elements of proof of the one crime are included in the other.' 250 Kan. 393, Syl. ¶ 3. It was concluded that the charges were not multiplicitous under K.S.A. 21-3107(2)." 252 Kan. at 177.

The two offenses were ultimately held to be multiplicitous. Later, *State v. Rinck,* 256 Kan. 848, 850, 888 P.2d 845 (1995), incorrectly stated that the *Warren* court had used the second prong of *Fike* to find the convictions multiplicitous.

In *State v. Vontress,* 266 Kan. 248, the defendant was also convicted of aggravated battery and aggravated robbery. The victim was shot twice. There was no effort to separate the two shots and attribute one to one crime and one to the other. The opinion thus treated the two shots as one act of force and reached the same result as *Warren.* It should be noted that both *Warren* and *Vontress* are distinguishable from the case before us. In each, both crimes had an element of force and the same force was used in both to satisfy that element.

In *State v. Mincey,* 265 Kan. 257, 264, 963 P.2d 403 (1998), we stated unanimously and unequivocally:

"Because the *Warren* court discussed the similarities between the concepts of multiple convictions and lesser included offenses, the Court of Appeals and Mincey mistakenly assumed that *Fike* had expanded the traditional element test to determine if convictions are multiple punishments for the offenses."

*Fike* is the case that added a second prong to the traditional elements test based on K.S.A. 21-3107(2)(d). In *Mincey*, we held the traditional elements test had not been expanded.

The majority opinion leaves the impression that K.S.A. 21-3107(2)(d) represents a development adding a new "layer" to the traditional elements test for multiplicity. This is not supported by the record.

Interestingly, the K.S.A. 21-3107 provisions first appeared in our statute books as a part of the general Kansas Criminal Code revision of 1969 and have remained therein verbatim until the 1998 amendment was enacted to erase *Fike*. It was not until *Fike* came along in 1988 that it was held that the 1969 codification had engrafted a new prong to the elements test for lesser included offenses. Now, over 32 years after K.S.A. 21-3107(2)(d) was enacted, the majority opinion holds the same statute added "another layer" to the traditional elements test for multiplicity. This defies all logic.

Before closing, it is appropriate to quote another excerpt from the *Fike* 1998 legislative hearing. In response to a request from James Clark, the KCDAA Executive Director, as to what Paul Wilson, a Kansas University School of Law professor and a member of the committee who drafted the 1969 Criminal Code Revision remembered as to K.S.A. 21-3107(2)(d), Professor Wilson responded in pertinent part:

"Congratulations on your appointment to the Judicial Council Advisory Committee on Criminal Law Revision. I am sure that your contribution will be a significant one. You will find that among the incidents of your service is that thirty years from now some eager and perceptive youngster will be asking what you meant when you drafted something that you have totally forgotten and haven't the slightest idea what you intended other than what you said.

"I have no recollection of the discussion or circumstances that produced K.S.A. 21-3107(2)(d). Obviously it was not controversial or a matter in which the committee members had a great amount of interest. If that had been the case, I probably would have remembered. It is my present thought that we intended only to clarify what we believed to be the then existing law. We did not intend to alter or enlarge the included offense concept. Perhaps our drafting was inept or our thinking unduly simplistic, but I think we had in mind only the idea expressed in part one of the court's two step analysis. It is with the utmost respect and deference that I suggest that the supreme court, aided and abetted by lawyers who

practice before it, may have been a party to making a simple proposition complex." Minutes of the Senate Judiciary Committee, January 27, 1998, Attachment 6-8.

Professor Wilson was so right. Thirty-two years after the enactment of the legislation in question, the majority has discovered that K.S.A. 21-3107(2)(d) created a new layer to the traditional elements test for determining multiplicity and has done to the law of multiplicity what it did to the law of lesser offenses.

The elements test herein is the appropriate test. Neither rape nor aggravated sodomy are crimes necessarily proven when aggravated kidnapping is proven. I would affirm the convictions.