NOT DESIGNATED FOR PUBLICATION

No. 112,591

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

WILLIS SHANE GORDON,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.


MEMORANDUM OPINION


Appeal from Ford District Court; E. LEIGH HOOD, judge. Opinion filed October 21, 2016. Affirmed.

*Nancy Ogle*, of Ogle Law Office, L.L.C., of Wichita, and *Willis Shane Gordon*, pro se, for appellant.

*David Belling*, assistant county attorney, *Natalie Randall*, county attorney, and *Derek Schmidt*, attorney general, for appellee.


Before BRUNS, P.J., POWELL, J., and STUTZMAN, S.J.


*Per Curiam*: Willis Shane Gordon appeals the dismissal of his K.S.A. 60-1507 motion by the district court. After a preliminary hearing the district court granted Gordon an evidentiary hearing on six of his complaints and dismissed the remaining seven grounds raised. On appeal, he challenges the dismissal of only four of his claims of error. Because the district court was correct in denying Gordon relief, we affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

In his underlying criminal case,

> "Gordon was charged with one count each of rape, aggravated kidnapping, attempted robbery, and aggravated battery after B.H. claimed that she was the victim of these crimes. At the ensuing jury trial, B.H. testified that she was kidnapped, raped, robbed, and battered by Gordon, but Gordon claimed that B.H. arranged to have consensual sex for money. The jury found Gordon guilty on all counts, and he received a controlling sentence of 460 months' imprisonment." *State v. Gordon*, No. 103,029, 2011 WL 420743, at *1 (Kan. App.) (unpublished opinion), *rev. denied* 293 Kan. 1110 (2011).

On his direct appeal, Gordon raised three issues: (1) ineffective assistance of counsel; (2) failure of the district court to give a limiting instruction; and (3) violation of his constitutional rights by enhancing his sentence based on a criminal history that had not been proven to a jury beyond a reasonable doubt. Another panel of this court dismissed his ineffective assistance of counsel claim for lack of jurisdiction, rejected his other two claims, and affirmed his convictions. 2011 WL 420743, at *1-3. The Kansas Supreme Court denied Gordon's petition for review on November 4, 2011.

On June 5, 2012, Gordon filed a timely, and lengthy, pro se K.S.A. 60-1507 motion. His primary pleading was nine pages long and is essentially the habeas pleading form. In that pleading, specifically in paragraphs 10 and 11, he raised a violation under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), contending the prosecution withheld important information about the cell phones used by the victim and police, and contends that had the jury seen the full text messages between the victim and him the jury may have reached a different verdict. Then in paragraph 20, where the form requests the movant to list how his counsel had been ineffective, Gordon appended a 35-page attachment discussing in detail his allegations of ineffective assistance of counsel.

Gordon also filed contemporaneously a 15-page "Affidavit of Case Law in Support of Habeas Corpus."

After reviewing this extensive pleading, the district court appointed counsel to represent Gordon on July 9, 2012. Interestingly, the court did not appoint someone from the appointment list but instead appointed an attorney specifically requested by Gordon. After a number of continuances granted at Gordon's counsel's request, on January 23, 2013, Gordon's counsel filed a modified K.S.A. 60-1507 motion intended to replace Gordon's original 60-1507 motion. This amended motion was far more succinct—only 10 pages—and was filed beyond the 1-year limitation period for filing 60-1507 motions.

In his modified motion, Gordon raised 13 grounds of relief. He argued his trial counsel was ineffective for: (1) lack of pretrial investigation; (2) failure to present evidence in support of his theory of defense, self-defense; (3) failure to maintain adequate pretrial contact with Gordon; (4) failure to strike a potential juror from the jury as requested by Gordon; (5) failure to object during to the State's questions regarding Gordon's silence after arrest; (6) failure to make appropriate trial objections; (7) failure to call a character witness requested by Gordon; (8) failure to assert multiplicity or merger defenses; (9) failure to contest certain convictions at Gordon's sentencing; (10) failure to take Gordon's desired trial strategy into proper consideration; (11) failure either to obtain certain discovery for trial or failure to provide this discovery to Gordon; (12) appellate counsel was ineffective during Gordon's direct appeal; and (13) the State failed to turn over exculpatory evidence.

At the preliminary hearing held on October 24, 2013, Gordon's counsel indicated that the movant would proceed on the modified motion. In a written order filed November 18, 2013, the district court granted Gordon an evidentiary hearing on six of his grounds of relief and dismissed the remaining seven. These six grounds for relief were denied after the evidentiary hearing.

Gordon timely appeals.

DID THE DISTRICT COURT ERR IN DISMISSING GORDON'S K.S.A. 60-1507 MOTION?

A district court has three options when reviewing a K.S.A. 60-1507 motion:

"'(1) The court may determine that the motion, files, and case records conclusively show the prisoner is entitled to no relief and deny the motion summarily; (2) the court may determine from the motion, files, and records that a potentially substantial issue exists, in which case a preliminary hearing may be held. If the court then determines there is no substantial issue, the court may deny the motion; or (3) the court may determine from the motion, files, records, or preliminary hearing that a substantial issue is presented requiring a full hearing.' [Citation omitted.]" *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014).

Here, Gordon only appeals the dismissal by the district court after a preliminary hearing of four of the grounds he asserted for relief: (1) trial counsel was ineffective for (a) failing to argue his rape and aggravated kidnapping convictions were multiplicitous and (b) failing to present evidence of Gordon's injuries that supported his theory of self-defense; (2) the State failed to turn over exculpatory evidence; and (3) the district court erred in allowing the State to cross-examine Gordon about his silence after his arrest.

"When . . . a district court denies a 60-1507 motion based only on the motion, files, and records after a preliminary hearing, we are in as good a position as that court to consider the merits. So we exercise de novo review." *Grossman v. State*, 300 Kan. 1058, 1061, 337 P.3d 687 (2014).

4

A.	*Did the District Court Err in Dismissing Gordon's Claim of Ineffective Assistance of Counsel*?

Gordon argues on appeal that his trial counsel was ineffective. A claim alleging ineffective assistance of counsel "presents mixed questions of fact and law requiring de novo review." *Thompson v. State*, 293 Kan. 704, 715, 270 P.3d 1089 (2011). Our duty is to review "the underlying factual findings for substantial competent evidence and the legal conclusions based on those facts de novo." *Boldridge v. State*, 289 Kan. 618, 622, 215 P.3d 585 (2009).

To prevail on a claim of ineffective assistance of counsel, a movant must establish "(1) the performance of defense counsel was deficient under the totality of the circumstances, and (2) prejudice, *i.e.*, that there is a reasonable probability the jury would have reached a different result absent the deficient performance." *Sola-Morales*, 300 Kan. at 882. Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel is highly deferential and requires consideration of all the evidence before the judge or jury. *Bledsoe v. State*, 283 Kan. 81, 90-91, 150 P.3d 868 (2007). We must strongly presume that counsel's conduct fell within the broad range of reasonable professional assistance. *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014). To establish prejudice, the movant must show a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different, with a reasonable probability meaning a probability sufficient to undermine confidence in the outcome. *State v. Sprague*, 303 Kan. 418, 426, 362 P.3d 828 (2015) (quoting *Robertson v. State*, 288 Kan. 217, 225, 201 P.3d 691 [2009]).

5

1.    *Was Gordon's trial counsel ineffective for failing to argue that his charges for aggravated kidnapping and rape merged or were multiplicitous?*

Gordon argues that his trial counsel was ineffective for two reasons. His first reason alleges his trial counsel was ineffective for failing to assert "multiplicity/merger" defenses at trial. Specifically, Gordon argues his trial counsel failed to argue that the charge of kidnapping merged with or was multiplicitous to the charge of rape.

In ruling on this issue, the district court stated:

"The next general area raised by the petitioner is that counsel failed to assert multiplicity/merger defenses. The record clearly shows that petitioner's trial counsel raised a multiplicity argument as it related to the petitioner being originally charged with two counts of Rape. Petitioner['] counsel successfully argued this issue (Pretrial Transcript, June 11, 2009, p.6-14). The petitioner now seems to argue that his trial counsel was ineffective in failing to raise and argue that kidnapping and rape are multiplicitous or they merge. The petitioner fails to set out any factual or legal basis for asserting this additional claim of multiplicity/merger as it relates to those two charges. Therefore, this Court finds that the files and records show that the petitioner is not entitled to relief on this issue. Further, this Court would find that this issue would be considered trial error."

To avoid summary denial of a motion brought under K.S.A. 60-1507,

"'[a] movant has the burden to prove his or her K.S.A. 60-1507 motion warrants an evidentiary hearing; the movant must make more than conclusory contentions and must state an evidentiary basis in support of the claims or an evidentiary basis must appear in the record.' [Citation omitted.] Once a movant satisfies that burden, we are 'required to grant a hearing, unless the motion is "second" or "successive" and seeks similar relief.' [Citations omitted.]" *Sola-Morales*, 300 Kan. at 881.

6

As to this particular point, Gordon's counsel stated at the preliminary hearing he was proceeding solely on his amended motion, which merely asserts that Gordon's trial counsel was ineffective for "[f]ailure to assert multiplicity/merger defenses." Counsel cites no caselaw or other support for this contention, and this ground for relief was not discussed at the preliminary hearing. Given this scant record, we cannot fault the district court for finding that Gordon's allegations on this point were merely conclusory.

However, in Gordon's original pro se filing, Gordon was much more extensive and explicit about his concerns on the multiplicity issue. Gordon alleged his trial counsel failed to challenge that the alleged rape and kidnapping charges were multiplicitous because these offenses were from one continuous act. In his affidavit, Gordon cited to *State v. Garcia*, 272 Kan. 140, 32 P.3d 188 (2001), in support of his argument that these charges were improperly split as the acts alleged were part of one continuous act. In *Garcia*, our Supreme Court held that because the State relied upon rape or aggravated sodomy in proving the bodily harm element of aggravated kidnapping, such convictions were multiplicitous and the defendant could not be convicted of both. 272 Kan. at 146.

We do not fault counsel before the district court in failing to pursue this issue more thoroughly because, as our analysis below shows, Gordon is not entitled to relief on this point. However, because the issue is a legal one arising on proved or admitted facts and one which we choose to consider on the merits in the interest of judicial economy and to preserve Gordon's fundamental rights, we are unwilling to conclude Gordon's contentions concerning multiplicity are merely conclusory in nature despite his counsel's handling of the issue. Moreover, we reject the State's arguments that the issue cannot be considered because it should have been raised on direct appeal. While the State is correct that issues which should have been raised on direct appeal typically are res judicata and therefore barred in a subsequent K.S.A. 60-1507 proceeding, one exception to that rule is when the movant alleges that prior counsel improperly failed to raise the issue. See *Trotter v. State*, 288 Kan. 112, Syl. ¶ 9, 200 P.3d 1236 (2009). Because Gordon's claim is

that counsel was ineffective for failing to raise the multiplicity issue, we can consider it. Therefore, we will turn to the merits of Gordon's argument.

The issue of whether multiple convictions are multiplicitous is a question of law subject to unlimited review. *State v. Stevens*, 278 Kan. 441, 446, 101 P.3d 1190 (2004). Relying on *State v. Buggs*, 219 Kan. 203, 547 P.2d 720 (1976), Gordon argues in his brief that even assuming the victim's account of the incident is true, his convictions for rape and aggravated kidnapping are multiplicitous. Gordon argues that, under the facts, when he allegedly ordered the victim to undress in the living room of the apartment and then ordered her to the bedroom of the apartment where there were pillows on the floor to complete the rape, the movement of the victim from one room of the apartment to another was merely for Gordon's convenience and therefore has no legal significance independent of the rape. We disagree.

Both the Fifth Amendment to the United States Constitution and Section 10 of the Kansas Constitution Bill of Rights prohibit a person from being twice put in jeopardy for the same offense. *State v. Schoonover*, 281 Kan. 453, 463, 473-74, 133 P.3d 48 (2006). The protections against double jeopardy prevent "(1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. [Citations omitted.]" 281 Kan. at 474. Here, the third prong is implicated because Gordon complains that he has been wrongfully convicted of two crimes for what he alleges is a single wrongful act.

> "'"Multiplicity is the charging of a single offense in several counts of a complaint or information. The reason multiplicity must be considered is that it creates the *potential* for multiple punishments for a single offense in violation of the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution and section 10 of the Kansas Constitution Bill of Rights."' [Citations omitted.]" 281 Kan. at 475.

However, in considering what is the "same wrongful act," our Supreme Court has rejected the notion applied in *Garcia* and cited by Gordon that if similar facts are used to prove different crimes, then a multiplicity problem exists. Instead, the court has adopted a bright-line same-elements test for determining multiplicity. 281 Kan. at 475. Stated the court in *Schoonover:* "We conclude that the single act of violence/merger analysis should no longer be applied when analyzing double jeopardy or multiplicity issues in the context of multiple description cases where a defendant has been convicted of violations of multiple statutes arising from the same course of conduct." 281 Kan. at 493. The court then held:

> "[T]he test to determine whether charges in a complaint or information under different statutes are multiplicitous is whether each offense requires proof of an element not necessary to prove the other offense; if so, the charges stemming from a single act are not multiplicitous. We further hold that this same-elements test will determine whether there is a violation of § 10 of the Kansas Constitution Bill of Rights when a defendant is charged with violations of multiple statutes arising from the same course of conduct." 281 Kan. at 495.

At the time Gordon committed his offenses, the relevant portion of K.S.A. 21-3502(a) defined rape as:

> "(1) Sexual intercourse with a person who does not consent to the sexual intercourse, under any of the following circumstances:
> (A) When the victim is overcome by force or fear;
> (B) when the victim is unconscious or physically powerless; or
> (C) when the victim is incapable of giving consent because of mental deficiency or disease, or when the victim is incapable of giving consent because of the effect of any alcoholic liquor, narcotic, drug or other substance, which condition was known by the offender or was reasonably apparent to the offender;
> "(2) sexual intercourse with a child who is under 14 years of age."

9

Aggravated kidnapping was defined as "kidnapping . . . when bodily harm is inflicted upon the person kidnapped." K.S.A. 21-3421. Kidnapping was defined as:

> "[T]he taking or confining of any person, accomplished by force, threat or deception, with the intent to hold such person:
>> "(a) For ransom, or as a shield or hostage;
>> "(b) to facilitate flight or the commission of any crime;
>> "(c) to inflict bodily injury or to terrorize the victim or another; or
>> "(d) to interfere with the performance of any governmental or political function."
> K.S.A. 21-3420.

Clearly, the offenses have elements that differ, meaning there is no multiplicity or double jeopardy problem due to the fact that Gordon was convicted of both during what could be described as the same course of conduct. See *Garcia*, 272 Kan. at 144 (crime of rape has an element not found in aggravated kidnapping). Accordingly, Gordon's trial counsel was not ineffective for failing to raise this issue in Gordon's criminal case.

2.      *Was Gordon's trial counsel ineffective for failing to present Gordon's desired theory of defense?*

Gordon also argues that his trial counsel was ineffective because he failed to review and gather evidence that supported Gordon's self-defense theory when he failed to develop medical evidence related to Gordon's injuries. Gordon claimed self-defense at trial and argued that the cut to his hand proved he acted in self-defense.

It is not entirely clear exactly what ruling of the district court Gordon is appealing. In his 60-1507 motion Gordon stated his trial counsel was ineffective for:

> "Not reviewing the evidence he should have anticipated would be presented by the State with the Petitioner prior to trial so as to determine appropriate avenues by which to

10

respond or explain how the evidence fit into Petitioner's overview of his defense, or to gather materials or set up presentation of evidence in opposition;

      1. Including medical evidence;

        . . . .

      II. Petitioner's injuries;

      [Transcript vol.1 pp. 146-147 Petitioner's own blood on gloves. Petitioner should have been able to present evidence of the nature and extent of the injuries he suffered, which were severe, to his hand, and which supported his self-defense theory.]"

The district court held:

"The Court finds from the record that evidence from the petitioner and others was presented that would clearly show that the petitioner suffered a severe cut to his hand which resulted in blood loss that would have soaked the gloves he was wearing. The petitioner fails to raise a substantial question of fact as to how a medical expert's testimony would have supported his defense. The petitioner is not entitled to relief on this particular claim."

At no point in his amended motion did Gordon complain that his counsel was ineffective for failing to find photographs or hospital records; he does so for the first time on appeal. It does not appear the district court made any ruling regarding any photographs or hospital records regarding Gordon's injuries.

As a general rule, we will not consider an allegation of ineffective assistance of counsel raised for the first time on appeal. *State v. Dull*, 298 Kan. 832, 839, 317 P.3d 104 (2014). "[G]enerally the factual aspects of a claim of ineffective assistance of counsel require that the matter be resolved through a K.S.A. 60-1507 motion or through a request to remand the issue to the district court for an evidentiary hearing under *State v. Van Cleave*, 239 Kan. 117, 119-21, 716 P.2d 580 (1986)." *State v. Galaviz*, 296 Kan. 168, 192, 291 P.3d 62 (2012). We will consider a claim of ineffective assistance of counsel for

11

the first time on appeal only when there are no factual issues and the two-prong ineffective assistance of counsel test can be applied as a matter of law based upon the appellate record. *Wimbley v. State*, 292 Kan. 796, 807, 275 P.3d 35 (2011).

This issue was not raised in Gordon's 60-1507 motion, nor did he request a *Van Cleave* remand. Furthermore, there are factual issues involved in this claim that preclude review of Gordon's claims as a matter of law. Thus, this issue is not properly before this court.

Alternatively, even if the issue were properly before us, Gordon made nothing but conclusory statements in his 60-1507 motion and failed "to establish a reasonable probability that, but for counsel's errors, a different result would have been achieved." See *Edgar v. State*, 294 Kan. 828, Syl. ¶ 5, 283 P.3d 152 (2012). In fact, as to the prejudice prong in particular, the district court held that evidence concerning Gordon's injuries was presented to the jury, meaning the jury was aware of his injuries and his self-defense claim, suggesting that the jury did not find Gordon's self-defense theory credible. On the basis of the record before us, we have no trouble concluding that Gordon failed to meet his burden in proving the jury's verdict would have been different but for the admission of this additional evidence. Thus, the district court did not err in denying this basis for relief.

B.     *Did the District Court Err in Dismissing Gordon's Claim that the State Committed a* Brady *Violation*?

Next, Gordon argues the State failed to disclose exculpatory evidence when it failed to disclose a police report and photographs of injuries to his hand to Gordon's counsel in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

12

Prosecutors have a duty to disclose evidence favorable to the accused when "the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. Favorable evidence includes both exculpatory and impeachment evidence. *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999). "Further, because law enforcement's knowledge of evidence is imputed to the State, a *Brady* violation can occur when the prosecutor withholds material evidence that is not known to the prosecutor but is known to law enforcement." *State v. Warrior*, 294 Kan. 484, 506, 277 P.3d 1111 (2012).

A claim of a *Brady* violation must establish: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler*, 527 U.S. at 281-82.

In his modified 60-1507 motion Gordon alleged the State committed a *Brady* violation when:

"Material evidentiary in nature was either not provided to Petitioner's trial counsel or not timely provided to him, in that trial counsel did [not appear] to be familiar with the exhibits presented at trial and therefore could not properly address them."

Regarding this basis for relief, the district court held:

"The next general area raised by the petitioner is that trial counsel was either not provided certain discovery for trial or trial counsel did not provide it to the petitioner. From reviewing the petitioner's pro se documents, it appears he is arguing that the Dodge City Police Department used an inferior or different model of cell phone which 'altered' the text messages from [victim's] phone. A review of the file clearly shows that trial counsel was provided open discovery from the County Attorney's office which also

13

included the police department. The arguments raised by the petitioner are conclusory in nature and fail to raise a substantial issue. Therefore, the petitioner is not entitled to relief on this issue."

We reject Gordon's claim on the ground that it should have been raised in his direct appeal. It is well established that motions filed under K.S.A. 60-1507 are not to be used as substitutes for a direct appeal or as a second appeal, and issues that could have been raised in a direct appeal are res judicata meaning they are barred from consideration. *Drach v. Bruce*, 281 Kan. 1058, 1079, 136 P.3d 390 (2006). Because a *Brady* violation amounts to trial error and Gordon provides us with no reasons why this issue was not raised in his direct appeal, Gordon is barred from raising the issue now.

Alternatively, even if Gordon could be excused for not raising the issue in his direct appeal, the issue was not properly raised before the district court. It is well established that constitutional errors may not be raised for the first time on appeal. *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015). Moreover, in order to invoke an exception to this general rule, Kansas Supreme Court Rule 6.02(a)(5) requires that a party raising a constitutional issue for the first time on appeal to affirmatively invoke and argue the exception. 2015 Kan. Ct. R. Annot. 41. Failure to do so amounts to an abandonment of the issue. 301 Kan. 1041, Syl. ¶ 1. As Gordon's appellate brief fails to invoke or argue an exception as to why this constitutional issue may not be considered for the first time on appeal, it is not properly before us.

C.      *Did the District Court Err in Dismissing Gordon's Claim that the State Committed a* Doyle *Violation*?

Finally, Gordon argues that the State violated *Doyle v. Ohio*, 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976), when it questioned Gordon about his interactions with the police after his arrest. Significantly, Gordon does not argue his counsel was

14

ineffective for failing to object. Rather, he argues the State violated his due process rights under the Fourteenth Amendment to the United States Constitution.

During Gordon's direct examination at trial, his counsel asked him the following series of questions:

"Q [Gordon's counsel]: Okay. Now when the police arrested you they read you your *Miranda* warnings?

"A [Gordon]: Yes, sir.

"Q: What was your response to them?

"A: I answered yes, I'll answer anything my attorney tells me to answer.

"Q: And at that point they stopped questioning you?

"A: Yes, sir.

"Q: Did they ever come back to get your side of the story?

"A: No, they didn't.

"Q: So is today the first time the State's hearing your side of the story?

"A: Yes, sir.

"Q: Today is the first time anybody is hearing your side of the story besides myself?

"A: Yes, sir."

After this exchange, Officer James Slickers testified during the State's rebuttal that he stayed with Gordon for 1 1/2 to 2 hours at the hospital after his arrest. Slickers further testified:

"Q [State]: At any time while you were with [Gordon] that night did he tell you anything about being attacked by Luther or having any money stolen?

"A [Slickers]: No, sir.

"Q: Did he tell any of the other officers to the best of your knowledge?

"A: No, sir.

"Q: No, sir, he didn't tell them or—

"A: To the best of my knowledge he didn't tell them. I'm sure if he did tell them we would have continued that investigation also.

15

"Q: Did you have some kind of small talk or conversation with him out at the hospital?

"A: Yes, sir.

"Q: Not about the details of why he had been arrested?

"A: No, sir.

"Q: So it wasn't like you were there and he was there and nothing was ever said?

"A: No, we just had friendly banter back and forth. No questions were asked about this particular arrest."

Slickers testified on cross-examination that he did not ask Gordon about the incident because Gordon had been read his *Miranda* rights.

Gordon's post-*Miranda* silence was again brought up in Gordon's closing argument. His counsel stated:

"When the police showed up he was willing to talk if he had a lawyer. He didn't have a lawyer in the hospital room. He was willing to talk if he had a lawyer. Today is the first time the State, you, or anybody has heard his side of the story so you have to understand the State has based their entire case on [victim's] story."

The State did not bring up Gordon's post-*Miranda* silence in its closing argument.

In *Doyle*, 426 U.S. at 619, the United States Supreme Court held that a prosecutor's use of a defendant's post-arrest silence to impeach that defendant's credibility violates the Fourteenth Amendment to the United States Constitution. See *State v. Hernandez*, 284 Kan. 74, 79, 159 P.3d 950 (2007); *State v. Mims*, 220 Kan. 726, 729-30, 556 P.2d 387 (1976). Our Supreme Court has also held that it is a *Doyle* violation to elicit evidence that a defendant has invoked the right to remain silent:

"It is constitutionally impermissible for the State to elicit evidence at trial of an accused's post-*Miranda* silence. [Citations omitted.] A *Doyle* violation occurs when the State attempts to impeach a defendant's credibility at trial by arguing or by introducing

16

evidence that the defendant did not avail himself or herself of the first opportunity to clear his or her name when confronted by police officers but instead invoked his or her constitutional right to remain silent. [Citation omitted.] *State v. Edwards*, 264 Kan. 177, 195, 955 P.2d 1276 (1998).

When considering this issue, we first must reject it on res judicata grounds. Like Gordon's *Brady* violation argument, his contention of a *Doyle* violation is a trial error that should have been raised on direct appeal. As Gordon has not articulated a reason why it was not, our consideration of the issue is barred. See *Drach*, 281 Kan. at 1079.

However, even considering the issue on the merits, Gordon's arguments are still unpersuasive. It was Gordon's counsel who first elicited testimony about Gordon's discussion with law enforcement after his arrest. A litigant may not invite error and then complain of the trial court's action on appeal. *State v. Peppers*, 294 Kan. 377, 393, 276 P.3d 148 (2012). Kansas courts have previously applied this invited error analysis in a very narrow context when considering *Doyle* violations. See *State v. Falke*, 237 Kan. 668, 682, 703 P.2d 1362 (1985), *disapproved on other grounds by State v. Walker*, 252 Kan. 279, 845 P.2d 1 (1993).

"In *State v. Murray*, 285 Kan. 503, 521-28, 174 P.3d 407 (2008), the court in fact recognized that invited error principles had been and could be applied 'in a very narrow context' of *Doyle* violations when the defense attorney effectively has opened the door. In that case, Murray's lawyer asked investigating officers if they had questioned Murray about circumstances they considered potentially incriminating. The officers responded they had not, thereby fostering the defense theory that investigators failed to fairly look at alternative explanations for those circumstances. But the officers didn't ask Murray because they couldn't—he had invoked his right against self-incrimination and declined to speak with them. The court found the trial judge properly allowed the prosecutor to briefly examine the lead detective about why those questions weren't put to Murray during the investigation. The examination necessarily revealed Murray's assertion of his constitutional right not to answer the questions. The court affirmed the ruling 'in light of

17

the specific facts' because defense counsel's questioning of the lead detective 'provided a sufficient justification' for the prosecutor to ask the detective to explain the reason. 285 Kan. at 526. The court found: '[T]he detective's testimony on redirect examination merely responded to defense counsel's implications during cross-examination and thus was invited error and cannot be the basis for reversal.' 285 Kan. at 526. . . .

"The *Murray* opinion is almost certainly confined to *Doyle* violations and could not fairly be extended to other constitutional rights. Nothing in the opinion suggests the court intended a broader application, and a good deal of the language points to the very opposite. In that case, as the court described the trial proceedings, Murray's lawyer deceptively portrayed material facts, raising *Doyle* as an invisible shield against the prosecutor in an effort to keep out otherwise relevant information that would have fully informed the jury. In effect, the court held that *Doyle* could not be used to mislead jurors, so the prosecutor's examination was proper. Looked at that way, there simply was no error. Many other courts have expressly recognized a limited fair-reply exception to *Doyle*. See *Cook v. Schriro*, 538 F.3d 1000, 1022 (9th Cir. 2008) ('We have interpreted *Doyle* to allow prosecutors to comment on post-*Miranda* silence in response to defense arguments.'); *United States v. Martinez-Larraga*, 517 F.3d 258, 268 (5th Cir. 2008) (noting continued recognition of fair-reply exception); *United States v. Matthews*, 20 F.3d 538, 552 (2d Cir. 1994) ('[W]hile comment on a defendant's silence is usually improper, such comment may be permissible when the defendant, by the impression he has sought to create, has opened the door.'); *United States v. Shue*, 766 F.2d 1122, 1129 (7th Cir. 1985) (The rule of *Doyle* may yield because '[a] defendant should not be permitted to twist his *Miranda* protection to shield lies or false impressions from government attack.'). The exception allows a surgical rebuttal confined to countering a cultivated and deceptive depiction of the evidence rather than a wide open use of the defendant's silence to prove guilt—the vice *Doyle* intended to eliminate. See *Murray*, 285 Kan. at 526 (prosecutor engaged in 'limited questioning' of the detective about Murray's decision to remain silent and did not mention it in closing argument); *State v. Higgins*, 243 Kan. 48, 49-52, 755 P.2d 12 (1988) (reversible error for prosecutor to dwell on defendant's exercise of right to remain silent in questioning witnesses and in closing argument even though issue first arose in response to question posed by defense counsel on cross-examination)." *State v. Hargrove*, 48 Kan. App. 2d 522, 538-40, 293 P.3d 787 (2013).

Here, Gordon himself opened the door to his post-*Miranda* silence and, as in *Murray*, fostered a theory that investigators failed to fairly look at alternative explanations for Gordon's actions. Also, as in *Murray*, the State here only briefly questioned Slickers about Gordon's post-*Miranda* silence and did not bring it up in its closing argument, even though Gordon raised the silence issue again in his closing argument. Consequently, Gordon cannot now argue in his K.S.A. 60-1507 motion that the State committed a *Doyle* violation when he invited the error. Based on a review of the motions, files, and records, the district court did not err in dismissing Gordon's claim of a *Doyle* violation.

In his supplemental brief, Gordon argues that his trial counsel was ineffective for failing to object to the alleged *Doyle* violation. However, as discussed above, this error was invited. Gordon cannot claim law enforcement never asked him for his side of the story, giving the jury the view that there was not a thorough investigation, without allowing law enforcement to inform the jury the reason why the never asked him his version of events. See *Murray*, 285 Kan. at 526. The brief testimony regarding the officer's lack of questioning of Gordon post-*Miranda* was "a surgical rebuttal confined to countering a cultivated and deceptive depiction of the evidence rather than a wide open use of the defendant's silence to prove guilt—the vice *Doyle* intended to eliminate." *Hargrove*, 48 Kan. App. 2d at 540; see *Murray*, 285 Kan. at 526. The district court did not err in its dismissal of Gordon's alleged *Doyle* violation.

The district court's dismissal of Gordon's K.S.A. 60-1507 motion is affirmed.