No. 78,139

STATE OF KANSAS, *Appellee*, v. LEROY L. PERRY, *Appellant.*

(968 P.2d 674)

Opinion filed November 13, 1998.

*Debra J. Wilson*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with her on the brief for appellant.

*Patrick E. Henderson*, assistant county attorney, argued the cause, and *Richard P. Senecal*, county attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Defendant was found guilty of one count of first-degree premeditated murder, two counts of attempted first-degree murder, and one count of aggravated battery. He claims his convictions for aggravated battery and attempted first-degree murder of one victim are multiplicitous and the district court improperly denied his waiver of a jury trial, failed to give lesser included offense instructions, and improperly excluded consideration of mitigating evidence when imposing the hard 40 sentence.

At about 7 a.m. on September 20, 1995, Leroy Perry knocked on Rogena Richards' door and requested to use her telephone. Rogena, who had known Perry since he was a baby, allowed him to use the telephone. She told Perry to hurry because she needed to get dressed. Rogena went into the kitchen. When she returned, Rogena again told Perry to hurry. Perry said to Rogena that she could not rush him and began striking her with a hard, sharp object. Rogena asked Perry to stop; then she blacked out. When Rogena regained consciousness, she was unaware that Perry had shot her near the left eye. She heard noise upstairs and went to a neighbor's house for help.

Lori Richards, Rogena's 22-year-old daughter, was in her bedroom when she was awakened by Perry. Perry directed Lori into the bedroom of Lori's 16-year-old sister, Dana. As Lori watched, Perry shot Dana. Lori returned to her bedroom to call 911. Perry followed Lori and forced her to get into bed. Perry first shot Lori

in the stomach, and then he shot her in the head. Lori regained consciousness in the hospital. Dana did not survive.

Perry was arrested later the same day of the shooting. On September 22, 1995, Perry's attorney filed a motion to determine Perry's competency. The district court ordered a competency evaluation at Larned State Security Hospital on September 25, 1995.

On December 13, 1995, the district court was advised by Larned State Security Hospital that Perry was incompetent. The district court ordered Perry to remain at Larned for 6 months or until competent to stand trial. Perry was determined competent on March 5, 1996, and subsequently returned to the district court for further proceedings. Other relevant facts will be provided as necessary.

## Denial of Defendant's Waiver of a Jury Trial

Prior to trial, Perry requested that his case be tried to the court without a jury. The State objected, and the court denied Perry's request. K.S.A. 22-3403(1) provides: "The defendant and prosecuting attorney, with the consent of the court, may submit the trial of any felony to the court. All other trials of felony cases shall be by jury." See *State v. Siver*, 237 Kan. 569, 701 P.2d 699 (1985).

Perry challenges the constitutionality of the district judge's refusal to allow his case to be tried to the court. Perry claims he was denied a fair trial because of jury bias. In support of this argument, Perry asserts that during selection of the jury panel, numerous potential jurors from the small community stated strong opinions regarding his guilt and the legal defense of insanity. Perry argues that under these circumstances the district court's refusal to permit his waiver of a jury trial resulted in a constitutionally unfair trial.

Noting *United States v. Moon*, 718 F.2d 1210, 1218 (2d Cir. 1983), the State asserts that Perry must show actual prejudice to warrant a new trial. The State argues Perry has provided no evidence of prejudice or that the prosecutor's refusal to waive a jury trial was improperly motivated. The State points out that defense counsel failed to question the venire after the State's voir dire. The State argues that under these circumstances, we can assume de-

fense counsel was satisfied with the impartiality of the jury pool, and Perry cannot now complain of prejudice.

Perry contends that the United States Supreme Court recognized the right to waive a jury trial in *Patton v. United States*, 281 U.S. 276, 74 L. Ed. 854, 50 S. Ct. 253 (1930). To support this contention, Perry quotes language from *Patton* that suggests the power to waive a jury trial is a right of the accused. 281 U.S. at 298. We disagree. *Patton* does not control the issue in this case. *Patton* concerned the accused's right to waive a jury of 12 members and proceed with a jury of 11 members where the court and the prosecutor have no objection to the waiver. Clearly, the issue in *Patton* was significantly different than the issue in this case. The *Patton* Court's holding was narrowly tailored to the specific question on appeal. In addition, *Patton* has been extensively abrogated and called into doubt by subsequent Supreme Court cases. See *Williams v. Florida*, 399 U.S. 78, 26 L. Ed. 2d 446, 90 S. Ct. 1893 (1970); *Singer v. United States*, 380 U.S. 24, 33-37, 13 L. Ed. 2d 630, 85 S. Ct. 783 (1965).

A defendant's only constitutional right concerning the method of trial is to an impartial trial by jury. *Singer*, 380 U.S. at 36. Despite the fundamental nature of the right to a jury trial, it is agreed the constitutional and statutory provisions guaranteeing the right extend a privilege to the accused which may be waived. *State v. Irving*, 216 Kan. 588, 589, 533 P.2d 1225 (1975).

Although the right to waive a jury trial exists, trial by jury has been established by the Constitution as the "normal and . . . preferable mode of disposing of issues of fact in criminal cases." *Patton*, 281 U.S. at 312. "The ability to waive a constitutional right does not ordinarily carry with it the right to insist upon the opposite of that right." *Singer*, 380 U.S. at 34-35.

The public has a great interest in jury trials in criminal cases; therefore, a defendant cannot waive a jury trial without the consent of the State and the judge. *United States v. Goodwin*, 457 U.S. 368, 73 L. Ed. 2d 74, 102 S. Ct. 2485 (1982). There is no constitutional right to a criminal trial before a judge sitting alone. *Singer*, 380 U.S. at 34. There is no constitutional impediment to conditioning a waiver of the right to a trial by jury on the consent of the State

and the trial judge, when, if either refuses to consent, the result is simply that the defendant is subject to an impartial trial by a jury—the very thing that the Constitution guarantees the defendant. *Singer*, 380 U.S. at 36.

The jury trial has been surrounded with safeguards to make it as fair as possible. For example, venue can be changed when there is a well-grounded fear of jury prejudice, and prospective jurors are subject to voir dire examination, to challenges for cause, and to peremptory challenges. K.S.A. 22-2616(1); K.S.A. 22-3408; K.S.A. 22-3410; K.S.A. 22-3411a; K.S.A. 22-3412. Perry failed to take advantage of the safeguards provided. In addition, without supporting evidence, his argument that prejudice in the community denied him a fair trial is not persuasive. Therefore, we find no error.

## Multiplicity

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights provide that no person shall be twice placed in jeopardy for the same offense. Perry was charged with aggravated battery and attempted first-degree murder for beating and shooting Rogena Richards. Relying on *State v. Cathey*, 241 Kan. 715, 741 P.2d 738 (1987), Perry asserts that there was only a single criminal act; therefore, the convictions for both crimes are multiplicitous, *i.e.,* he was twice placed in jeopardy for a single offense.

Multiplicity is the charging of two or more counts in a complaint where only a single criminal act supports the charges. K.S.A. 21-3107(1) allows charging an individual with multiple violations arising from a single transaction when the same conduct *may* establish the commission of more than one crime. The fact that an accused is charged with multiplicitous counts in a complaint or information is not in and of itself a violation of the Double Jeopardy Clause. The clause merely prevents a defendant from being punished more than once for the same crime. *State v. Mincey*, 265 Kan. 257, 261-62, 963 P.2d 403 (1998).

The principles for determining whether the convictions for attempted first-degree murder and aggravated battery of Rogena

Richards. are multiplicitous are: (1) A single offense may not be divided into separate parts and, generally, a single wrongful act may not furnish the basis for more than one criminal prosecution; (2) if each offense charged requires proof of a fact not required in proving the other, the offenses do not merge; and, (3) where offenses are committed separately and severally, at different times and at different places, they cannot be said to arise out of a single wrongful act. *State v. Cathey*, 241 Kan. at 718-19.

The claim of multiplicity was raised in *Cathey* where two brothers avenging a beating inflicted upon another brother, beat and shot the person who they believed to have beaten their brother. Ron Cathey was convicted of aggravated battery and attempted first-degree murder. On appeal, Cathey claimed the convictions were multiplicitous. In determining whether the convictions were multiplicitous, we said:

"Where there is only one victim and two acts of violence—a beating and a shooting—occurring at approximately the same time and place, the person who inflicts such injuries cannot be charged with [or convicted of] both aggravated battery and attempted murder. To hold otherwise would be inconsistent with our reasoning in *Garnes* that when a series of violent acts occurs simultaneously, it is multiplicitous to charge both aggravated battery and attempted first-degree murder." 241 Kan. at 719-20.

In an attempt to distinguish *Cathey*, the State asserts that the aggravated battery conviction was based upon Perry pistol whipping Rogena, and the attempted first-degree murder conviction was predicated upon Perry shooting Rogena. In analyzing the State's assertion there were two separate criminal acts, it is necessary to review the State's complaint, the district court's jury instructions, the verdict form, and the evidence. The State's charging document does not distinguish between the beating and the shooting. Jury Instruction No. 7 stated:

"The defendant is charged with the crime of an attempt to commit first degree murder of Rogena Richards. The defendant pleads not guilty.
"To establish this charge, each of the following claims must be proved:
"1. That the defendant performed an act toward the commission of the crime of first degree murder of Rogena Richards;
"2. That the defendant did so with the intent to commit the crime of first degree murder;

"3. That the defendant failed to complete commission of the crime of first degree murder; and

"4. That this act occurred on or about the 20th day of September, 1995, in Atchison County, Kansas.

"The elements of first degree murder are:

"1. That the defendant intentionally killed Rogena Richards;

"2. That such killing was done with premeditation; and

"3. That this act occurred on or about the 20th day of September, 1995, in Atchison County, Kansas."

The lesser included offense instructions for attempted first-degree murder did not include aggravated battery.

Jury Instruction No. 17 provided:

"The defendant is charged with the crime of aggravated battery of Rogena Richards. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. That the defendant intentionally caused great bodily harm to, or disfigurement of, Rogena Richards;

"2. That this act occurred on or about the 20th day of September, 1995, in Atchison County, Kansas."

The instructions to the jury do not require the jury to distinguish between the pistol whipping and the shooting to determine whether two separate acts occurred. Nor do the jury verdict forms distinguish the separate acts of violence claimed by the State.

The evidence was that Perry that beat Rogena into unconsciousness and then shot her. Rogena was a single victim. The jury was not instructed to determine whether the acts were committed separately and severally, at different times or at different places. Under the circumstances, it cannot be said that the attempted murder conviction and the aggravated battery conviction did not arise out of a single wrongful act. Perry perpetrated a series of violent acts simultaneously against Rogena. Therefore, the aggravated battery and the attempted first-degree murder convictions are multiplicitous, requiring reversal of the aggravated battery conviction.

## Lesser Included Offense

Perry argues that for his shooting of Lori and Rogena Richards, the district court should have given instructions on aggravated battery as a lesser included offense of attempted first degree-murder.

Perry concedes that he did not request this instruction at trial. This issue can be raised for the first time on appeal pursuant to K.S.A. 21-3107(3), which provides:

"In cases where the crime charged may include some lesser crime, it is the duty of the trial court to instruct the jury, not only as to the crime charged but as to all lesser crimes of which the accused might be found guilty under the information or indictment and upon the evidence adduced."

See *State v. Sanders*, 258 Kan. 409, 413, 904 P.2d 951 (1995); *State v. Bowman*, 252 Kan. 883, 892, 850 P.2d 236 (1993).

Although the trial court has a statutory duty to instruct the jury on lesser included offenses, the duty has limitations. A criminal defendant has a right to an instruction on all lesser included offenses supported by the evidence at trial so long as (1) the evidence, when viewed in the light most favorable to the defendant's theory, would justify a jury verdict in accord with the defendant's theory and (2) the evidence at trial does not exclude a theory of guilt on the lesser offense. *State v. Moncla*, 262 Kan. 58, 73-74, 936 P.2d 727 (1997); *State v. Harris*, 259 Kan. 689, 702, 915 P.2d 758 (1996).

Could the jury reasonably convict Perry of aggravated battery? Here, the evidence was that Perry beat Rogena into unconsciousness and then shot her in the head. He then proceeded upstairs where he shot and killed Dana Richards. After shooting Dana, Perry stomped on her skull. Perry then shot Lori in the stomach and in the head.

The evidence is clear that Perry's intent was not to cause great bodily harm or disfigurement to the victims; he intended to kill the victims. Under the facts, a lesser included instruction of aggravated battery was not required.

## Imposition of Hard 40 Sentence

During the sentencing hearing, Perry's counsel requested that Perry again be evaluated to determine his competency prior to being sentenced. Perry's counsel asserted to the judge that he had doubts as to Perry's competency but provided no evidence that Perry's competency had changed since Larned State Security Hospital found Perry competent to stand trial. The trial judge denied the request for a continuance and a determination of competency.

The judge stated that he had not observed any changes in Perry during or after the trial. There was no evidence that Perry's competency had changed since last being evaluated at Larned.

In light of the judge's ruling, Perry then sought to continue the sentencing hearing. Perry's attorney offered no explanation for why he could not proceed nor why he required a continuance. The trial judge denied the request for a continuance and sentenced the defendant. Perry now asserts that the trial judge erred in not granting his request for a continuance and ordering a determination of his competency.

The State's request to run sentences consecutively requires the sentencing judge to permit a defendant to present evidence in mitigation of his or her sentence. See K.S.A. 21-4637. Perry asserts he was not allowed to present evidence of mitigation. However, the record shows that the trial judge did permit Perry to present evidence of mitigation. Perry argued to the judge that his lack of capacity at the time of the crimes warranted mitigation. Perry was offered an opportunity by the sentencing judge to present further evidence of mitigation. Perry declined to do so. Neither Perry nor his counsel informed the district judge of a need for additional time to obtain mitigating evidence. On appeal, Perry does not indicate additional mitigating factors he could have presented below. This claim has no merit.

We note that Perry's counsel admitted to the sentencing judge that there was no evidence that Perry was not competent or any evidence to support Perry's claim that his competency status had changed since his last evaluation at Larned. Under the circumstances, the trial court's decision not to order a competency evaluation or grant a continuance was not error.

Three days prior to sentencing, the State filed a motion requesting that the court impose a life sentence for count one, the first-degree murder conviction, with parole eligibility after serving 40 years and that the sentences imposed for counts two, three, and four be consecutive to count one. In support of its motion, the State cited K.S.A. 21-4716, K.S.A. 21-4718, and K.S.A. 21-4608 and asserted that Perry's stomping on his deceased victim's head was excessively brutal. The State also pointed out that the victims

had not provoked Perry and that the viciousness of Perry's attacks warranted protecting the community as long as statutorily permissible.

Perry argues that the fact he placed more than one person in risk of death cannot be considered in imposing the hard 40 because he was not given notice that factor would be relied upon by the State in its motion. Perry cites *State v. Gideon*, 257 Kan. 591, 600-01, 894 P.2d 850 (1995), for the proposition that the State must give notice of the aggravating circumstances upon which it will rely in seeking a 40-year sentence. Even though the State's notice did not list this factor, this argument fails for several reasons.

The *Gideon* court interpreted a statute that was replaced by the Kansas death penalty statute in 1994. Today, K.S.A. 21-4635 governs whether a 40-year sentence may be imposed. It provides, in relevant part, that "if a defendant is convicted of murder in the first degree based upon the finding of premeditated murder, *the court* shall determine whether the defendant shall be required to serve a mandatory term of imprisonment of 40 years or sentenced as otherwise provided by law." (Emphasis added.) The State no longer is required to notify a defendant of its intention to seek a 40-year sentence. The responsibility for determining the imposition of a 40-year sentence originates with the sentencing judge, not the State. In reaching a decision, the judge is directed to consider the aggravating factors and mitigating factors set out in K.S.A. 21-4636 and K.S.A. 21-4637. Aggravating circumstances include a finding that the defendant committed the crimes in an especially heinous, atrocious, or cruel manner. K.S.A. 21-4636(f).

Perry also asserts that the imposition of a life sentence without the possibility of parole for 40 years is unsupported by evidence. Perry points out there is no evidence that the murder victim suffered prior to the shooting because the evidence indicated that the victim was shot once in the head and it was only after death occurred that he crushed her skull. He argues that the physical abuse to Dana did not occur prior to the victim's death. See *State v. Cook*, 259 Kan. 370, Syl. ¶ 8, 913 P.2d 97 (1996).

When the sufficiency of the evidence is challenged for establishing the existence of an aggravating circumstance in a hard 40 sen-

tence proceeding, the standard of review is whether, after a review of all the evidence, viewed in the light most favorable to the prosecution, a rational factfinder could have found the existence of the aggravating circumstance beyond a reasonable doubt. *State v. Reed*, 256 Kan. 547, 564, 886 P.2d 854 (1994).

For purposes of determining the existence of aggravating factors regarding whether a murder was committed in a heinous, atrocious, or cruel manner, the term "heinous" means extremely wicked or shockingly evil; "atrocious" means outrageously wicked and vile; and "cruel" means pitiless or designed to inflict a high degree of pain, or utter indifference to, or enjoyment of the suffering of others. *State v. Alford*, 257 Kan. 830, 838, 896 P.2d 1059 (1995). The aggravating circumstance that a murder was committed in an especially heinous, atrocious, or cruel manner is established when the perpetrator inflicts serious mental anguish or serious physical abuse before the victim's death; mental anguish includes the victim's uncertainty as to his or her ultimate fate. *State v. Gideon*, 257 Kan. at 612.

In *State v. Alford*, the sufficiency of the evidence was challenged by a defendant convicted of first-degree murder. The record in *Alford* indicated that Alford shot his victim twice, chased her and forced her into a restaurant kitchen, shot her again, and dragged her back into the kitchen and tried to shoot her again. The gun then jammed, causing it to click several times before he was able to shoot his victim two more times, killing her. This court determined that these facts constituted substantial competent evidence supporting the determination the crime was committed in an especially heinous, atrocious, or cruel manner. 257 Kan. at 838.

In this case, the evidence that the crime was committed in a heinous, atrocious, or cruel manner was that Perry forced one of his victims to witness the shooting death of her sister and he waved the gun around in front of his victims before shooting them. This evidence was sufficient to support the finding that the crimes were committed in an especially heinous, atrocious, or cruel manner.

However, there is additional evidence to sustain the imposition of the hard 40 sentence. In addition to the murder conviction, the defendant was convicted of a crime in which he inflicted serious

physical abuse on another. For purposes of determining whether to impose a 40-year sentence without parole for a first-degree murder conviction, the facts surrounding Perry's convictions for crimes against the other two victims are relevant. See K.S.A. 21-4636(b); *Gideon*, 257 Kan. at 614.

We agree that K.S.A. 21-4635(b) prohibits the State from introducing aggravating evidence during the sentencing hearing without first informing the defendant. This is to allow the defendant the opportunity to rebut such evidence. However, there was no evidence admitted at the sentencing hearing. The judge relied on the evidence admitted at trial. Perry was well aware of that evidence and had ample opportunity to rebut that evidence at the sentencing hearing; therefore, this argument also fails.

Perry's final argument against imposition of a 40-year sentence is that the trial court erred in determining there were no mitigating factors. On appeal, Perry claims there was substantial evidence that he was psychotic at the time of the offenses. This defense was raised during the trial, and the jury determined beyond a reasonable doubt that Perry was cognizant of his actions and that the murder was premeditated. The trial court's determination that Perry's mental state was not a mitigating factor was not error.

Affirmed in part and reversed in part.