IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 122,246

STATE OF KANSAS,
*Appellee*,

v.

LEROY L. PERRY,
*Appellant*.

SYLLABUS BY THE COURT

Under K.S.A. 2022 Supp. 60-2103(a), if entry of judgment in a criminal case occurs when a defendant is not present, defendant has 30 days from the date he receives notice of the judgment to take an appeal without a showing of excusable neglect.

Appeal from Atchison District Court; JOAN M. LOWDON, judge. Submitted without oral argument September 15, 2023. Opinion filed March 1, 2024. Affirmed.

*Korey A. Kaul,* of Kansas Appellate Defender Office, was on the brief for appellant.

*Patrick E. Henderson*, special prosecutor, of Henderson Law Office, of Atchison, and *Kris W. Kobach*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

WILSON, J.: Leroy L. Perry was convicted of murder in the 1990s and received a hard 40 life sentence. More than 20 years later, he filed a self-represented motion in district court to modify his life sentence. The court denied the motion. The order was

1

filed with the clerk on April 30, 2018, and the clerk's notation shows the order was sent to Perry. A year and a half later, Perry filed a notice of appeal, which asserted he never received the order denying his motion.

We remanded the case to the district court and directed it to make factual findings about the notice of appeal's untimeliness. The district court found Perry received the order shortly after it was mailed to him, and concluded Perry was properly notified of the order as required by statute and court rule. The district court also held that Perry could not show excusable neglect for his failure to timely appeal. Perry appeals to this court. We affirm.

Jurisdiction is proper. See K.S.A. 2022 Supp. 22-3601(b)(3) (direct appeals to Supreme Court allowed for life sentence crimes); K.S.A. 60-2101(b) (Supreme Court jurisdiction over direct appeals governed by K.S.A. 2022 Supp. 22-3601).

FACTS AND PROCEDURAL BACKGROUND

In 1996, a jury convicted Leroy L. Perry of one count of first-degree premeditated murder, two counts of attempted first-degree murder, and one count of aggravated battery. The court sentenced Perry to a hard 40 life sentence for the first-degree premeditated murder conviction, 97 months for each of the attempted first-degree murder convictions, and 41 months for the aggravated battery conviction. We reversed the aggravated battery conviction as multiplicitous but affirmed Perry's other convictions and sentences on direct appeal. *State v. Perry*, 266 Kan. 224, 230, 968 P.2d 674 (1998).

Acting without counsel, Perry filed a motion in district court on April 13, 2018, alleging his hard 40 life sentence was unconstitutional. The district court denied the

2

motion in an order filed April 30, 2018. Nearly 10 months later, Perry sent a letter to the clerk requesting a copy of "the ROA [Register of Actions] report on my case." The clerk responded in a letter by stating "advance payment is required before copies of documents will be furnished. . . . The ROA record is 9 pages which would be a total of $2.25." About seven months later, Perry again requested the ROA report in his case. A couple of weeks after that, on October 24, 2019, Perry filed a notice of appeal, asserting he did not receive the April 2018 order.

Noting the lapse of time between the order and the notice of appeal, we issued a show cause order directing Perry to show why his appeal should not be dismissed for lack of jurisdiction because it was untimely. In his response, Perry asked us "to find excusable neglect in his filing of a late notice of appeal due to the fact that he never received notice of the district court's decision." So we remanded the case to the district court to make factual findings about the notice of appeal's untimeliness in light of *State v. Hooks*, 312 Kan. 604, 607, 478 P.3d 773 (2021) (untimely appeal may be allowed if order issued outside defendant's presence and notice inadequate).

During a hearing before the district court on remand, Perry, by then represented by counsel, testified he did not receive a copy of the April 2018 order denying his motion. Perry also testified he knew the clerk's note indicates the April 2018 decision was sent to him. He explained he did not hear from the district court for over a year and eventually wrote to the clerk. He then received a letter from the clerk, and learned he would have to pay $2.25 for a ROA report in his case. He testified that "at this time I had no absolute money on my inmate account to pay for the copy of the ROA." He said that it took him two months to save up money to pay for it. Perry asserted he received a copy of the ROA report in October 2019. He then immediately filed a notice of appeal upon realizing his motion had been denied.

3

On cross-examination, Perry explained he did not take any steps to determine his motion's status between April 2018 and February 2019 because he was waiting to hear from the court. He conceded that he did not produce any records outlining his account balances during the time in question. The court took the matter under advisement, but then held a second hearing.

At the second hearing, Perry submitted documents showing he did have enough funds to pay for the ROA report from as early as April 2018 and until at least September 2019. Perry also offered an affidavit from a fellow inmate, asserting he sent $2.50 to the Atchison County District Court on September 25, 2019, to pay for Perry's ROA report because Perry could not do so.

The State argued the appropriate test was whether Perry could show excusable neglect, and further argued Perry could not do so here because he had enough money to pay for the ROA report when the district court clerk notified him of the $2.25 fee.

After hearing arguments, the court found Perry could have purchased the ROA report at any time after he received the clerk's fee request for a copy of it. Additionally, Perry's testimony that he could not afford to buy the report was not credible. Further, Perry's delay in filing was not due to excusable neglect.

The court's attention then turned to when and how Perry received notice of the district court's April 2018 order. The court stated:

> "And, again, noting as previously stated that the funds were positive the entire time and could have covered the ROAs at any point after he received the letter from the clerk that was dated March 12th of 2019.

4

"Primarily the Court does address that particular issue because I do think it's a credibility issue, and that is one of the considerations of the Court that Mr. Perry—the Court did not find that particular statement that he could not afford the ROAs to be credible, and that his account records clearly show he could have covered that cost at any point.

"The one thing that I found I think most particularly compelling in this particular matter, as it relates to whether or not Mr. Perry did receive the notice—or the order from April 30th of 2018 was that Mr. Perry had requested for the second time his ROAs on October 7th of 2019.

"On October 24th of 2019, roughly three weeks later, he filed his notice of appeal, and he specifically wrote his notice of appeal was to appeal the District Court adverse ruling of the defendant's motion for sentence modification of April 30th of 2018.

"At that particular point, he—I'm showing—or at least I was struggling to find that he would have received the ROAs before that date.

. . . .

"So without the ROAs, there would have been no way for him to know about that order without having actually received it. And so that was the compelling piece, I guess, for the Court.

"So I do show compliance as it relates to KSA 60-252 [*sic*], as well as 134(a). Mr. Perry's statements at the time that he testified—actually at one point he denied receiving the ROAs. At another point he said he got the ROAs in October of 2019. But I don't show a record within the Court file within the ROAs themselves that they were sent out to him prior to him filing his notice of appeal. And without that, again, I don't see how he would have known about the order without having received it. Or having known that there was anything to appeal.

5

. . . .

"So I do believe that Mr. Perry did have actual notice of the District Court's order or actual knowledge of the same based on the appeal itself.

"I will say, as it relates to the actual date, that it's much more difficult. Quite frankly, it appears to me that that's why he had initially requested the ROAs and that takes us back then to February 26th of 2019.

"And so that's where I think that it likely Mr. Perry had received his order, but that is significantly more difficult, other than to note that it did go out from the District Court back on the time that it was authored or released, I guess I should say, on April 30th of 2018."

Perry filed a notice of appeal on June 14, 2021.

The district court later issued an order memorializing its findings and conclusions. The order explained Perry could have purchased the ROA report at any time from March 2019 through October 2019. Nor did the court find Perry credible when he testified that he had to save up money to buy the report. Next, the court explained that, since Perry never received the ROA report, he would only have known to file a notice of appeal by receiving the order denying his pro se motion to modify his sentence. The court noted: "Given the parties agree that the order was sent out April 30, 2018, which is the same day that the court issued the order, and the court's finding that Defendant did receive it, there is compliance with K.S.A. 60-258 and 134(a)." Finally, the order explained that the court adopted the State's excusable neglect argument from the State's brief.

In April 2022, we granted leave for Perry to docket his appeal out of time.

ANALYSIS

On appeal, Perry argues the district court erred by finding he received the order shortly after it was filed on April 30, 2018. The State did not respond to the claim of error, but argues the district court correctly held that Perry did not show excusable neglect.

*Standard of Review*

"When a district court has made findings of fact and conclusions of law, an appellate court determines whether the factual findings are supported by substantial competent evidence and whether those findings adequately support the district court's conclusions of law." *Bicknell v. Kansas Dept. of Revenue*, 315 Kan. 451, 481, 509 P.3d 1211 (2022). "'Substantial competent evidence is "such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion." [Citation omitted.]'" *State v. Smith*, 312 Kan. 876, 887, 482 P.3d 586 (2022). "'In evaluating the evidence to support the district court's factual findings, an appellate court does not weigh conflicting evidence, evaluate witnesses' credibility, or redetermine questions of fact.' [Citation omitted.]" *Bicknell*, 315 Kan. at 481.

To the extent this issue requires statutory interpretation or construction, we have unlimited review. *In re Marriage of Shafer*, 317 Kan. 481, 484, 531 P.3d 524 (2023).

> "'The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. In ascertaining this intent, we begin with the plain language of the statute, giving common words their ordinary meaning. When a statute is plain and unambiguous, an appellate court should not speculate about the

legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. But if a statute's language is ambiguous, we will consult our canons of construction to resolve the ambiguity. [Citations omitted.]'" *State v. Eckert*, 317 Kan. 21, 27, 522 P.3d 796 (2023).

*Perry's Window for Appeal*

"In Kansas, the right to appeal is entirely statutory and, as a general rule, appellate courts may exercise jurisdiction only when authorized to do so by statute." *State v. McCroy*, 313 Kan. 531, 534, 486 P.3d 618 (2021). "The filing of a timely notice of appeal is jurisdictional. Failure to file a timely notice of appeal requires dismissal of the untimely appeal." *Guillory v. State*, 285 Kan. 223, 224, 170 P.3d 403 (2007). Whether jurisdiction exists is a question of law, subject to unlimited appellate review. *State v. Hillard*, 315 Kan. 732, 775, 511 P.3d 883 (2022).

The district court's April 2018 order characterized Perry's motion as either a motion to correct an illegal sentence pursuant to K.S.A. 22-3504, or a motion of prisoner attacking his sentence pursuant to K.S.A. 60-1507. On appeal, Perry agrees it was a motion to correct an illegal sentence.

A defendant has 30 days to file an appeal from the denial of a motion to correct an illegal sentence. K.S.A. 2022 Supp. 60-2103(a); *State v. Swafford*, 306 Kan. 537, 540, 394 P.3d 1188 (2017).

K.S.A. 2022 Supp. 60-2103(a) provides:

"When an appeal is permitted by law from a district court to an appellate court, the time within which an appeal may be taken shall be 30 days from the entry of the judgment, as

8

provided by K.S.A. 60-258, and amendments thereto, except that upon a showing of excusable neglect based on a failure of a party to learn of the entry of judgment the district court in any action may extend the time for appeal not exceeding 30 days from the expiration of the original time herein prescribed."

In *Hooks,* we considered whether an untimely notice of appeal precluded us from having jurisdiction over Hooks' appeal when Hooks asserted his untimeliness was based on a lack of notice of the district court's ruling. The district court denied Hooks' motion to correct an illegal sentence, as well as relief under K.S.A. 60-1507. Hooks filed a notice of appeal four months later, arguing he had just recently learned of the court's decision. When Hooks docketed his appeal, we issued a show cause order requiring Hooks to explain why his case should not be dismissed for lack of jurisdiction. Hooks replied that there was no indication the order was mailed to him and attributed his untimeliness to the court's error. He suggested his appeal should be permitted based on the unique circumstances doctrine.

Even though the unique circumstances doctrine had been eliminated in Kansas, we found Hooks could still prevail because appellate courts, in limited circumstances, may "exercise jurisdiction despite an untimely notice of appeal." *Hooks*, 312 Kan. at 606 (citing *Albright v. State*, 292 Kan. 193, 198, 251 P.3d 52 [2011]). We noted "Hooks' allegations about deficient service of the journal entry denying his motion and recognize[d] that incarcerated pro se defendants are at the mercy of the prison mail system to receive notice of the denial of their motions. These allegations are relevant to the jurisdictional inquiry." 312 Kan. at 607.

We based this conclusion on three authorities. First, K.S.A. 2022 Supp. 60-258 provides: "When judgment is entered by judgment form, the clerk must serve a copy of the judgment form on all attorneys of record within three days, excluding Saturdays,

9

Sundays and legal holidays." The statute applies to defendants who are self-represented. *Hooks*, 312 Kan. at 607. Second, Supreme Court Rule 134(a) (2023 Kan. S. Ct. R. at 218) provides: "If the court rules on a motion or other application when an affected party who has appeared in the action is not present—either in person or by the party's attorney—the court immediately must serve notice of the ruling."

Third, we relied on our previous decision in *McDonald v. Hannigan*, 262 Kan. 156, 936 P.2d 262 (1997). There, McDonald filed a petition for writ of habeas corpus in the district court. Around three months later, McDonald wrote the court "requesting a copy of the appearance docket and asking whether a hearing had been scheduled in the case." 262 Kan. at 158. He received a copy of the docket, realized his case had been dismissed, and filed a notice of appeal. He also moved to allow a late filing of the notice of appeal. The district court granted the motion, and the Court of Appeals reversed. It concluded that the district court's reasoning for granting the motion did not rely on excusable neglect, which the panel explained was the only way to permit a late notice of appeal under K.S.A. 60-2103(a). 262 Kan. at 159. The Court of Appeals then denied a motion for reconsideration. We granted McDonald's petition for review.

We explained "[u]nder most Kansas statutes, the time for taking an appeal under the civil code does not commence to run until the party entitled to appeal has received notice of the judgment or order or the judgment is filed with the clerk of the court." *McDonald*, 262 Kan. at 163. We clarified that the time for "taking an appeal from a final judgment entered without notice commences to run when there has been a compliance with K.S.A. 60-258 and Supreme Court Rule 134." 262 Kan. at 163-64. We ultimately reversed the Court of Appeals, finding "that McDonald, upon receiving notice of the trial court's judgment, promptly filed a motion to allow a late notice of appeal based upon

10

excusable neglect for failure to learn of the entry of judgment in the district court." 262 Kan. at 164.

In *Hooks*, we relied on *McDonald* to hold that Hooks might have been entitled to file his appeal out of time if Hooks did not learn about the district court's decision until after the deadline had passed. *Hooks*, 312 Kan. at 607. That said, we ultimately remanded to the district court to make factual findings "concerning the date of compliance with K.S.A. 2019 Supp. 60-258, compliance with Supreme Court Rule 134(a), and Hooks' actual receipt of the district court's order or actual knowledge of the same." 312 Kan. at 608. In Perry's case, our remand directed the district court to make these findings.

*McDonald* and *Hooks* therefore indicate that, under K.S.A. 60-2103(a), Perry had 30 days to file his notice of appeal *from the date he received notice* of the district court's April 2018 order. *McDonald*, 262 Kan. at 164; *Hooks*, 312 Kan. at 607; see also *State v. R.H.*, 313 Kan. 699, 701, 490 P.3d 1157 (2021) (finding jurisdiction over an appeal where defendant did not receive actual notice of the district court's ruling until "well outside the 30-day time limit to file an appeal").

*The district court's findings about the date of notice and compliance with K.S.A. 2020 Supp. 60-258 and Rule 134(a) are supported by substantial competent evidence.*

Perry's only argument on appeal is directed at the district court's factual finding that he must have received the order sometime shortly after April 30, 2018. Perry argues this finding is not supported by substantial competent evidence because the more likely scenario, based on the evidence, is that he received notice of the court's April 2018 decision after receiving the ROA report in October 2019. Perry contends this explanation is more reasonable because it accounts for the "flurry of activity" leading up to the notice

11

of appeal being filed. This flurry consists of Perry's February 2019 letter asking for a ROA report, the clerk's reply in March 2019, Trotter's payment to the district court in September 2019, Perry's October 2019 letter asking for a copy of the ROA report, and Perry's October 2019 notice of appeal.

But Perry's argument misses the point. As an appellate court, when we consider the district court's findings of fact we do not decide whether the district court could have made different findings or even whether *we* might have made different findings. We only consider the findings made and whether those findings are supported by competent evidence.

Here, we discern the court was most persuaded by the significance of two pieces of evidence, duly admitted or considered from the court record without objection. First, the last page of the April 2018 order includes a hand-written "check mark" immediately preceding the following words: "Copy to: Gerald Kuckelman Atchison County Attorney [and] Leroy Perry Defendant." From this notation—and the parties' stipulation—the court found the order was *sent* by the clerk to Perry around the time the order was entered into the record. Second, the ROA report includes notations of the clerk's *receipt* of two requests from Perry for an ROA report but does not include an entry showing an ROA report was *sent* to Perry. From this *absence* of a notation that an ROA report was sent by the clerk, the court inferred an ROA report was *not sent* by the clerk to Perry or there would have been a notation to that effect. Thus, if an ROA report was not sent, Perry could not have received one.

From these facts and the court's inferences from these facts, the district court reasoned that Perry must have received the order shortly after the clerk sent it to him. Otherwise, he would not have known there was a decision to appeal, let alone the precise

12

date the order was filed, which was included in his notice of appeal. And since the notation on the order shows the order was sent to Perry around the time the order was filed, Perry must have received notice of the order around that same time—April 30, 2018.

Perry asserts the court's findings are not supported by competent evidence. He suggests, "In actuality, the Court's finding is less of an affirmative finding supported by evidence and more of a logical conclusion based upon a faulty premise." Perry argues the evidence conveys he received notice of the April 2018 order after receiving an ROA report in October 2019, after Trotter paid $2.50 to the district court. Perry claims this is more likely than the "logical conclusion" the district court came to.

In essence, Perry challenges the inferences the district court drew when reaching its conclusion. See Black's Law Dictionary 930 (11th ed. 2019) (defining inference as, "A conclusion reached by considering other facts and deducing a logical consequence from them."). When evaluating whether substantial competent evidence supports a district court's factual findings, this court "must accept as true the evidence and all the reasonable inferences drawn from the evidence which support the district court's [factual] findings and must disregard any conflicting evidence or other inferences that might be drawn from it." *Gannon v. State*, 305 Kan. 850, 881, 390 P.3d 461 (2017). The question therefore becomes whether the district court's inferences were reasonable.

The distinction between reasonable inferences and impermissible speculation is not amenable to clear explanation. See, e.g., *Harper v. Washburn,* 308 Or. App. 244, 254, 479 P.3d 1101(2020) ("As we have observed before, the line between permissible inferences and impermissible speculation is 'sometimes faint.'"); *Hooper v. State,* 214 S.W.3d 9, 16 (Tex. Crim. App. 2007) ("Without concrete examples, it can be difficult to

13

differentiate between inferences and speculation, and between drawing multiple reasonable inferences versus drawing a series of factually unsupported speculations."); Restatement (Third) of Torts: Phys. & Emot. Harm § 28 (2010) ("The difficulty that courts confront is that the line between reasonable inference and prohibited speculation is one of the more indistinct lines that exists in law and also is one on which reasonable minds can and do differ.").

We have described the distinction between reasonable inferences and speculation as being related to established facts. See, e.g., *State v. Brown*, 316 Kan. 154, 169, 513 P.3d 1207 (2022) ("Considering the entire record, the prosecutor's comments were a fair inference drawn from the evidence presented at trial."); *State v. Johnson*, 284 Kan. 18, 27, 159 P.3d 161 (2007) ("We need not resort to conjecture and speculation to find that Johnson inflicted mental anguish upon his victim, but rather such a conclusion is a reasonable inference to be drawn from the proven facts."); *Duncan v. Railway Co.*, 86 Kan. 112, 123, 119 P. 356 (1911) ("While the jury were warranted in drawing fair and reasonable inference from the facts and conditions shown, it was only from those shown, and not from those imagined or inferred, that such inference could rightfully be drawn.").

The court's reasoning is logical and its logic is tethered to facts. We believe a person could make reasonable inferences from the evidence to reach the finding of fact that Perry received his copy of the order shortly after it was sent to him. See *Bicknell*, 315 Kan. at 481-82 ("'Substantial evidence is such legal and relevant evidence as a reasonable person might accept as sufficient to support a conclusion.'") (quoting *Gannon v. State*, 298 Kan. 1107, 1175-76, 319 P.3d 1196 [2014]).

And even if the facts could support alternative findings, we must affirm the district court in the face of these alternatives so long as the district court's findings are supported

14

by substantial competent evidence. See, e.g., *Webber v. Automotive Controls Corp.*, 272 Kan. 700, 705, 35 P.3d 788 (2001) (explaining that "findings supported by substantial evidence will be upheld by an appellate court even though evidence in the record would have supported contrary findings"); *Pearcy v. Williams*, 163 Kan. 439, 442, 183 P.2d 243 (1947) (explaining "our only function on appeal is to ascertain whether there is substantial competent evidence supporting, or tending to support, the finding as made and not whether some evidence appears in the record which would have supported a contrary finding had the trial court seen fit to make one").

We find the facts and inferences the court relied on are supported by substantial competent evidence and support the court's rationale. We therefore affirm the district court's findings that Perry received notice of the April 2018 decision shortly after it was issued. We affirm the district court's findings that the district court complied with K.S.A. 2020 Supp. 60-258 and Rule 134(a). We dismiss Perry's appeal for lack of jurisdiction because it is untimely under K.S.A. 2022 Supp. 60-2103(a).

We do not reach the State's excusable neglect argument.

Affirmed.